Wm. H. Parker, Respondent, *vs.* Jos. M. Shackelford, *et al.*, Appellants.

1. *Trespass—County road—New location of—Cutting down hedge on rented land.*
   *Exemplary damages.*—After a road had been regularly surveyed and opened
   by the county, and used and apparently acquiesced in for fifteen years, the no-
   tion obtaining that the survey was wrong, at the instance of those interested,
   a new one was made correcting the old, and the road overseer located the road
   correspondingly and closed that originally made, and cut down a hedge of
   *bois d'arc* bordering it. The owner of the hedge had let the land enclosed by
   it on a share of the crop grown by his tenants. *Held,* that he had his action
   for trespass against the overseer, and those employed by him, for trespass, and
   on proper evidence, showing annoyance and harassment by the defendant,
   might recover exemplary damages.

*Appeal from Lafayette County Circuit Court.*

*Alexander & Childs,* with whom were *Walker & Field,* for Appellants.

I. Respondent was not in possession of the premises in question, and could not maintain this action. (1 Chit. Pl., p. 62–64.) A landlord cannot during a subsisting lease maintain trespass for an injury to the land. (1 Chit. Pl., p. 175.) This is the rule in this State. (See Roussin vs. Benton, 6 Mo., 592; Sigerson vs. Hornsby, 14 Mo., 71; Cochran vs. Whitesides, 34 Mo., 417; Brown vs. Carter, 52 Mo., 46.)

II. If there is a mistake in the location of a line, a party, upon the discovery of the mistake, is not barred by limitation or estopped from asserting his rights, but has all the rights he originally had. In this case all parties were mistaken as to the true line. Hence the law applies as laid down in St. Louis University vs. McCloud, 28 Mo., 485; Cutter vs. Waddingham, 22 Mo., 206–266; Thomas vs. Babb et al., 45 Mo., 384; Kincaid vs. Dormey, 47 Mo., 337, and 51 Mo., 552. The county had lost none of its original rights to open the road, and might do so without bringing ejectment to recover possession first.

III. This is no case for exemplary damages. (See Franz vs. Hilterbrand, 45 Mo., 121; Eagle vs. Jones, 51 Mo., 316; see also decisions in other States: Hamilton vs. 3d Av. R. R.

Co., 53 N. Y., 25 ; Kier vs. Peterson, 14 Penn. St., 357 ; Cur-
bing vs. Longfellow, 26 Me., 306 ; Sims vs. Glazenor, 14 Ala.,
645 ; Gardner vs. Field, 1 Gray (Mass.), 151 ; Gray vs. Stev-
ens, 82 Vt., 1 ; Buller vs. Collins, 12 Cal., 457.)

*H. C. Wallace*, for Respondent.

I. The arrangement between plaintiff and Reynolds and
Stumf was for a cropping on the shares, not a strict tenancy ;
and besides, the cause of action is for injuries to *Bois d'Arc*
hedge fences growing on the lands of plaintiff and not for
injuries to the land inclosed, nor to the possession thereof.
The hedge fences divided the lands cultivated by Reynolds
and Stumf from other fields and lands owned by plaintiff,
and there is no pretence that these hedge fences were rented
or let to Reynolds and Stumf or anybody else. Under the
circumstances, plaintiff was in the lawful possession of the
hedge fences, and had the right to sue for injuries to the same
by the defendants, who were total strangers to the title.
(1 Chit. Pl. [10 Ed.] p. 175, § 7; id. p. 63, § 7; 1 Greenl.
Ev., § 616.)

The Osage orange hedge is a species of tree, and plaintiff
had a clear right to sue for injuries to his successionary interest
in the same, or to his inheritance. (Reed vs. Price, 30 Mo.,
442.)

II. Plaintiff had a right to exemplary damages. (Freiden-
heit vs. Edmunson, 36 Mo., 226 ; Goetz vs. Ambs, 27 Mo.,
28 ; Bulkley vs. Knapp, 48 Mo., 152; Sedg. on Meas. Dam.,
pp. 555, 565 ; Maleck vs. Tower Grove & L. R. Co., 57 Mo.,
17.; Walser vs. Thies, 56 Mo., 89 ; Linsley vs. Bushnell, 15
Conn., 225 ; Hanley vs. Bacon, 15 Conn., 268 ; Johnson vs.
Hannahan, 3 Stroth., 425.)

III. The road was established by the County Court in 1854,
and worked under the authority of the County Court, and
traveled over from 1854 to March 1871. Fences and other
improvements were made by plaintiff with a view to the road
then established, and the road was recognized and acquiesced
in by the adjoining land owners on both sides, including

Louis Jones, Geo. Davis, John B. Jones, and plaintiff during the whole time. There is no pretence that the County Court had ordered any change or re-location of said road. But Shackelford, as overseer, and the other defendants undertake of their own accord to decide on the question of mistake in the original location of said road, the question of the correctness and validity of such "recent survey," the question of limitation, the question of estoppel, resulting from acquiescence and valuable improvements along the road, etc. (See Taylor vs. Zepp, 14 Mo., 482 ; Blair vs. Smith, 16 Mo., 273 ; Wyatt vs. Thomas, 24 Mo., 23 ; Lindell vs. McLaughlin, 30 Mo., 28, 32–33 ; Moseman vs. Talbott, 55 Mo., 392 ; Thomas vs. Pullis, 56 Mo., 211 ; Barry vs. Otto, 56 Mo., 177 ; Washb. Real. Prop. (2d Ed.) 24–28 ; Id. 456, 457, 459, 460, 462.)

NAPTON, Judge, delivered the opinion of the court.

This suit was to recover damages for a trespass by a road overseer and his hands in cutting down a *bois d'arc* fence. The principal defendant pleaded that he committed the trespass alleged in the prosecution of his duty as a road supervisor ; and the other defendants that they were summoned by said supervisor to assist in opening the road. The pleadings are not very condensed, the evidence quite extensive and the instructions numerous, but the facts in the case are plain and simple, and may be stated in a few words, the merits of the case depending upon one or two very plain propositions of law ; and we are unable to see any benefit that could result from an attempt to state, even in substance, the contents of a record of two hundred pages.

The plaintiff in this case was the owner of a tract of land in Lafayette county, long anterior to 1864, including among other lands the west half of the south-west quarter of section 11, township 48, R. 25. Jones, Yokely and Davis were owners of the lands on the other side of the half section line. There was a county road as far as Freedom Chapel, and another through Dobson's land on the west, but the people in the neighborhood

Parker v. Shackelford, et al.

wanted a connection between the two roads, and thereupon petitioned the County Court to have one opened on the line running through sections ten and eleven. This petition was granted, and the road ordered to be opened. This was done by Parker, the plaintiff, and the road was opened on what was supposed to be the half section line, separating Parker's land from Yokely, Davis and Jones, &c. The then County Surveyor established this line.

Parker, the plaintiff, planted his hedges alongside of this road, and all the neighbors seemed to acquiesce by regulating their fences accordingly.

In 1871 a notion became current that this line between the half sections was an erroneous one, and the surveyor who was then in office was ordered at the instance of Jones, and perhaps others interested, to re-survey the line. Bliss, the surveyor in 1870–71 ascertained that a mistake had been committed by his predecessor, Weeden, and established the line some thirty yards south of this road. The road had been traveled and used for fifteen years then. Bliss said that Weeden's survey was correct, but he had commenced at a corner which was not a true corner. But it is not material whether Bliss' survey or Weeden's was correct. We will assume that the last one was the true survey.

It will be perceived that this new survey threw the road, if designed to be as it was, on the line between the half sections ten and eleven, about thirty yards south of the existing road, and thereupon Shackelford, the defendant, at the instance of his co-defendants, Jones and Cole, undertook to correct this mistake and to place this road through the plaintiff's land, and to cut down his *bois d'arc* hedges and to stop up the old road. An injunction was obtained against this from the Common Pleas Court of Lafayette county, but it was disregarded, and this suit was brought to recover damages which this destruction of fences occasioned plaintiff.

The verdict of the jury was for $250 damages. The main points in this case are that the plaintiff could not recover in

trespass and that the jury had no right to give exemplary damages.

At the time of the institution of this suit, the land of plaintiff was rented out on a contract with his tenants to pay one-third of the proceeds of the land to plaintiff. The plaintiff continued to be the owner of the land, and of the trees on it, and of the hedges on it which he planted and which were made by these trees. This suit was brought to recover damages for the destruction of these hedges which the landlord continued to own, and which destruction was really injurious to the inheritance.

The exemplary damages allowed by the instructions, and given by the jury, we think were all justified. There was no evidence to show that the defendant, Shackelford, allowed himself to be used by his co-defendants to annoy and harass plaintiff. This was a matter for the jury. That exemplary damages may be allowed in actions formerly termed actions on the case, is expressly held in Musick vs. Tower G. & L. R. R. Co., 57 Mo., 21.

Judgment must be affirmed. The other judges concur.