AUSTIN, *Appellant*, v. THE HUNTSVILLE COAL & MINING COMPANY.

1. **A Mining Lease.** An instrument which purports, in consideration of a fixed annual rental, to lease *and convey* for a term of years all the coal on or under certain described land, is a mining lease, and authorizes the lessee to take out all the coal he can mine on the premises during the term. It is not an absolute grant of all the coal in the land.

2. ———. Mere acceptance of a coal mining lease, without entry made or possession taken of either the land or the coal, vests in the lessee no property in the coal.

3. **Trespass by Mining** : LEASE. It is no defense to an action for mining and taking coal from under plaintiff's land, that the defendant has made payment for the coal to a person who had a mining lease upon the land, but had never entered nor done any work under the lease.

4. **Outstanding Lease, when no Defense in Trespass.** An action will lie for an injury to the possession of land, notwithstanding there is outstanding an unexpired lease granted by the plaintiff, in the action, provided there is no one in possession under the lease.

5. ———. Under the same circumstances an action will lie for injury to the freehold caused by mining.

6. **Judgment**: LEASE. Mere recovery of a judgment for rents due upon a mining lease of coal lands does not vest in the lessee the property in the coal; and this is true whether the judgment be satisfied or not.

7. **Measure of Damages** : TORT. In an action for wrongfully mining and taking coal, if it appears that the defendant's act was not willful or grossly negligent, the true measure of damages for the coal taken is its value at the mouth of the shaft, less the cost of severing it from the freehold and delivering it at the mouth.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

This was an action of trespass to recover treble damages for mining and taking coal from under plaintiff's land. The facts were as follows: On the 27th day of February, 1871, the plaintiff executed an instrument leasing and

conveying all the coal under his land to the North Missouri Coal and Mining Company, for a period of twenty years. This instrument is set out in full in the opinion. This company never entered upon the land or did any work under the contract, and failing to pay the stipulated rent, plaintiff sued and obtained judgment for the full amount to become due for the whole term as specified in the contract, but the company proving to be insolvent, the judgment was never satisfied. In the year 1875 the defendant, the Huntsville Coal & Mining Company, sunk a shaft upon land adjoining plaintiff's, and in the course of its operations took out large quantities of coal from under plaintiff's land. This suit being brought for the trespass, the defendant, claiming that the North Missouri Coal & Mining Company was, by virtue of the foregoing contract, owner of the coal, settled with that company by paying $50 and taking a receipt in full, and then pleaded this settlement in bar of plaintiff's claim. There was a trial, resulting in a judgment for defendant, from which plaintiff appealed.

*Chas. A. Winslow* for appellant.

1. The instrument executed by Austin and wife to the North Missouri Coal & Mining Company was a lease. The limitation to twenty years unalterably stamps the estate conveyed as one for years, with all its legal incidents, irrespective of the granting or descriptive clauses. It does not pass the title to the entire mineral in the ground. *Bradley v. Phosphate Co.*, 1 Hughes C. C. 72; *Johnstown I. Co. v. Cambria I. Co.*, 32 Pa. St. 241; *Funk v. Haldeman*, 53 Pa. St. 229; *Grubb v. Bayard*, 2 Wall. Jr. 81; *Knight v. Coal & I. Co.*, 47 Ind. 105. It passes only the right to the possession and use of the land for mining purposes during the continuance of the term. 1 Washburn Real Prop., (4 Ed.) 436; 4 Kent Com., (11 Ed.) 92; Chase's Blackstone, 322, 325; 1 Greenl. Cruise, 243.

2. The North Missouri Coal & Mining Company, by the execution of the lease, acquired merely what is known in the law as the *interesse termini*; (1 Wash. Real Prop., (4 Ed.) 442; 4 Kent Com., (11 Ed.) 106; Taylor Land. and Ten., (6 Ed.) 11; 1 Platt Leases, 22; 1 Cooley's Blackstone, 425; Chase's Blackstone, 326; 5 Bac. Abridg., (Bouvier) 631; 1 Greenl. Cruise, 243; Smith Land. and Ten., 45;) and never having gone into possession, had no such interest in the coal as would authorize it to settle with defendant for the trespass committed thereon. *Lutwich v. Mitton,* Cro. Jac. 604.

3. The damage shown by the record was a permanent injury to the freehold, and thus a damage to plaintiff's reversion, for which he may recover, even though a right of action might exist in the lessee for the injury to the possession. There was no entry by the lessee, the term has long since been abandoned, and Austin's damages go to the entire extent of the coal taken. *George v. Fisk,* 32 N. H. 32; *Wood v. Griffin,* 46 N. H. 230; *Parker v. Shackelford,* 61 Mo. 68; *Lewis v. Branthwaite,* 2 Barn. & Adolph. 437.

4. The recovery of judgment by plaintiff against the North Missouri Company for rents is no bar to this action. It did not convert the rents into purchase money. The lease itself declares these rents to be a personal debt, and provides that after forfeiture they "may be collected as any other debt." These provisions are in fact liquidated damages for a forfeiture or abandonment of the lease.

5. As to the measure of damages, see *Martin v. Porter,* 5 M. & W. 351; *Morgan v. Powell,* 43 Eng. Com. Law 73; *s. c.,* 3 Q. B. 278; *Maye v. Tappan,* 23 Cal. 306; *Barton Coal Co. v. Cox,* 39 Md. 1. *Robertson v. Jones,* 71 Ill. 405; *McLean Coal Co. v. Long,* 81 Ill. 359; 2 Waterman on Tresp., p. 540, § 1096.

*Martin & Priest* also for appellant.

1. Plaintiff, being in possession, was the only person

entitled to sue for the trespass. *Fitch v. Gosser*, 54 Mo. 267; *Cochran v. Whitesides*, 34 Mo. 417; *Reed v. Price*, 30 Mo. 442; *Pope v. Cordell*, 47 Mo. 251; *Fuhr v. Dean*, 26 Mo. 116; Blanchard & Weeks on Mines, 189; *Rogers v. Cooney*, 7 Nev. 213.

2. Plaintiff was in possession and the rent unpaid; hence, under the statute of landlord and tenant the lease was forfeited. Wag. Stat., p. 882, § 33. As to what is a lease, see *Boone v. Stover*, 66 Mo. 434; *Hamilton v. Wright*, 28 Mo. 199; *Dark v. Johnston*, 55 Pa. St. 164; *s. c.*, 6 Am. L. Reg. (N. S. ) 543; Washburn's Real Prop., (4 Ed.) 292 to 297; *Sennett v. Bucher*, 3 Pa. 392. Then if it be a lease and the rents unpaid and plaintiff in possession, it was forfeited, and the North Missouri Coal & Mining Company had no rights in the coal by which it could settle the damages. But if the instrument be a license, which plaintiff claims it is, (Bainbridge on Mines, p. 261 to 275, inclusive,) then the North Missouri Coal & Mining Company never had any right or title to any of the coal, nor could have none until the coal was severed from the freehold.

*John F. Williams* and *Thos. B. Reed* for respondent.

1. The grant of Austin to the North Missouri Company was a sale of the coal, whereby he divested himself of all interest in it. It was no lease. There is no provision for forfeiture. The monthly payments are absolute— not depending on the value of the mining operations. The coal is conveyed absolutely, without qualification or condition; and the time given to take it away is twenty years. *Gowan v. Christie*, L. R., 2 Scotch App. 284; *s. c.*, 5 Eng. (Moak) 123; *Massot v. Moses*, 3 So. Car. 168; *s. c.*, 16 Am. 697; *Caldwell v. Fulton*, 31 Pa. St. 475; *Funk v. Haldeman*, 53 Pa. St. 229. The full power to take, without liability to account, was conferred upon the grantee, and that is equivalent to ownership itself, it being the highest attribute of ownership, and a gift of the one necessarily carries with it the other. *Morris v. Palen*, 1 Watts 389.

It was not a grant of a privilege or mere license to dig, hunt and search for coal, and dispose of what might be found in twenty years, but a grant of all the coal on and under said lands—a grant of the entire subject, without any restrictions or limitations; and the law is, that where the intent is to give the entire usufruct and power of disposal, as in this case, the legal title must be held to pass. Blanchard & Weeks on Mines, 31. Livery of seizin is no longer indispensable to the grant of a corporeal hereditament. Unopened mines may be conveyed, and the grantee takes more than a right issuing out of land or exercisable therein. He takes the mines themselves. *Caldwell v. Fulton*, 31 Pa. St. 475. Where there is a grant of all the coal, as in this case, it effects a severance of the right to the surface from the underlying coal. It makes them distinct corporeal hereditaments. *Caldwell v. Copeland*, 37 Pa. St. 427; *Seaman v. Vawdrey*, 16 Ves. 390.

2. The grantee alone can maintain trespass, because he is entitled to the full damage. *Attersoll v. Stevens*, 1 Taunt. 183; Blanchard & Weeks on Mines, 437; 37 Pa. St. 427; 5 Eng. (Moak) 123.

3. As to the measure of damages, see *Forsyth v. Wells*, 41 Pa. St. 291; *Mueller v. St. L. & I. M. R. R. Co.*, 31 Mo. 262; Blanchard & Weeks on Mines, 633 to 636; Bainbridge on Mines, 570; *Waters v. Stevenson*, 13 Nev. 157; *Kier v. Peterson*, 41 Pa. St. 357.

SHERWOOD, C. J.—This action for damages for coal taken by defendant from under plaintiff's land, requires an examination into the nature and effect of an instrument in this form:

This agreement made and entered into this 27th day of February, 1871, by and between Jno. H. Austin and Mary J. Austin, his wife, parties of the first part, and the North Missouri Coal & Mining Company, parties of the second part, Witnesseth: That for and in consideration of $1 in hand paid, and the further consideration of $400

per annun . to be paid in monthly payments of $33.33, on the 20th day of each and every month, the said parties of the first part do hereby lease and convey, for themselves, their heirs and assigns, for the term of twenty years from the date hereof, to the party of the second part, their heirs and assigns, all the coal on or under the following land, to-wit : (describing the same;) also 100 feet of the surface from the center of the North Missouri Railroad, extending the whole length of the twenty acres touching the road, for the erection of such buildings as may be necessary for the safe and economical working of said coal, and such right of way as may be necessary for the successful mining and removing of said coal. And said parties of the first part hereby bind themselves not to grant a right of way for the purpose of hauling coal from any other mines than those established by said company. And the parties of the first part hereby agree for themselves, their heirs and assigns, that the said party of the second part shall have the right to take down and remove all improvements, buildings or machinery put upon said land by them as they may see fit. And the said party of the second part, for themselves, their heirs and assigns, are hereby bound that the said rent shall be paid punctually, on the 20th day of each month hereafter, at Huntsville. And if, after due notice has been given at the office of said company in Randolph county, said monthly rent shall remain unpaid (without special agreement) for the space of two months, then said party of the second part shall forfeit and pay to the said party of the first part one year's rent; and if said rent shall remain unpaid for another term of two months, then after written notice of thirty days, the rent for the full term of this lease shall become due and payable, and the same may be collected as any other debt; but if during the term of this lease, said coal company should close their office in Randolph county, then said notice of failure to pay the rent shall be given at the general office of said company to the president or treasurer of said company.

This instrument was duly signed and sealed by the parties, and was acknowledged by the grantors in due form under the statute, and was recorded March 18th, 1871.

## I.

We are well satisfied from a consideration of the language of this instrument, that no reasonable construction could accord to it any other character than that of a lease. The salient features of such an instrument are certainly present here. We have the apt term " lease " employed ; we have the monthly "recompense of rent," and the " determinate period " at the expiration whereof the contract ceases by its own express limitation. If the parties had intended an absolute grant of "all the coal" under the land described, the time during which the coal should be dug would not have been limited. For, by thus limiting the time, during which mining operations were to be carried on, it is equivalent to saying that the party of the second part is to have all the coal it can mine on the premises, before the lapse of twenty years. And we are not of opinion that the word "convey" should be allowed to overthrow the operation of the word " lease " which precedes it. We think the instrument itself, taken as a whole, and the authorities cited by plaintiff fully support the views above announced.

## II.

If those views are correct, the next point for determination is, what interest did the North Missouri Coal & Mining Company acquire by reason of the execution of the lease by Austin, and the reception thereof by such company. It stands admitted that no entry was made under this lease, nor possession taken of either land or coal, nor anything done in that direction by the lessee. What passed then to the lessee in consequence of the delivery of the lease? It is said that: "A tenant for years is not said to be seized of the lands, the possession not being given him by the ceremony of livery of seizin. Nor does the mere delivery of a lease for years vest any estate in the lessee, but only gives

him a right of entry on the land; when he has actually entered, the estate becomes vested in him, and he is then possessed, not properly of the land, but of the term for years; the seizin of the freehold still remaining in the lessor;" (1 Greenlf's Cruise, 243,) and that "until the lessee shall have entered upon the leased premises he acquires no estate in the same. The interest which he acquires by the delivery of the lease, and before entry made, is, an *interesse termini.*" 1 Wash. Real Prop., (4 Ed.) 442. "Before entry under the lease, as a demise at common law, the lessee had only an executory interest, or *interesse termini,* and no possession. And *interesse termini* is the right to the possession of a term at a future time; and, upon an ordinary lease to commence *instanter,* the lessee, at common law, has an *interesse termini* only until entry." 4 Kent Com., (11 Ed.) 106. "The estate of a lessee for years is called a term, *terminus,* because its duration is limited and determined; for every such estate must have a certain beginning and a certain end. It is perfected only by the entry of the lessee, for before the time fixed for entry, the whole estate remains in the lessor, and the lessee has no estate in the land, but merely a right thereto which is called an *interesse termini.* * * After the period fixed for the commencement of the term, the lessee's interest is still called an *interesse termini.*" Taylor Land. and Ten., (6 Ed.) 11. "A lease for years must be perfected by the entry of the lessee. * * Before entry the whole estate remains in the lessor, the lessee for years having in strictness no estate, but merely a right denominated an *interesse termini,*" 1 Platt Leas., 22. "Nor indeed does the bare lease vest any estate in the lessee, but only gives him a right of entry on the tenement, which right is called his interest in the term, or *interesse termini.*" 1 Cooley Black. Com., 425; Chase's Black., 326.

Since no entry was made by the North Missouri Coal & Mining Company, we must conclude, if we follow the authorities quoted above and others cited for plaintiff, that as the lease was not perfected in the manner we have

pointed out, such company acquired neither possession of the land nor property in the coal by reason of the bare execution and delivery of the lease.

### III.

This being the case, the defendant cannot take shelter under an alleged settlement and accounting with the North Missouri Coal & Mining Company, for the coal unwarrantably taken from the land of plaintiff.

### IV.

There is another reason flowing from the non-entry of the North Missouri Coal & Mining Company, *ex. gr.:* The lease never having become operative, in consequence of no possession having been taken thereunder, the plaintiff remained possessed as he was originally, and so could maintain trespass for the invasion of and injury to his possession. *Cochran v. Whitesides*, 34 Mo. 417; *Moore v. Perry*, 61 Mo. 174.

### V.

There is another ground, aside from the injury to the possession, whereon plaintiff may bottom his action, and that is, for the permanent injury to the freehold, consequent upon taking large quantities of coal from the premises. *George v. Fisk*, 32 N. II. 32; *Parker v. Shackelford*, 61 Mo. 68. And no distinction is to be taken in this regard between trespass in cutting and removing trees and the removal of ores from beneath the surface. *Lewis v. Branthwaite*, 2 B. & A. 437.

### VI.

We are unable to see the relevancy of the evidence offered by defendant of the recovery of judgment by plaintiff against the North Missouri Coal & Mining Company. It was proved that plaintiff gave the notices provided for under the lease, and then sued that company, and recovered judgment as above stated. But it was shown

also that that company, when this cause was tried, was both defunct and insolvent, so that such recovery of judgment was of no avail. Besides, the lease declared the rents to be a debt, and after default in payment to be " collected as any other debt." It seems settled by the authorities that though the lessee fails through lack of entry to convert his *interesse termini* into an actual estate, this does not affect the lessor's right to recover; entry of the lessee not being essential to such recovery; since the rent becomes due upon the lease, not upon the entry, and the action is upon the covenant as for a breach of an executory covenant. 1 Platt Leas., 23; Taylor Land. and Ten., (6 Ed.) 11; 1 Wash. Real Prop., 445. Even if the judgment recovered by plaintiff against the North Missouri Coal & Mining Company had been satisfied, this could not have converted what was merely rent money into purchase money, and so have vested the title to the coal in such company; and this must *a fortiori* be the case where no such satisfaction has occurred. Even in actions of trespass or trover, according to the more modern authorities, the title to the specific chattel does not pass—the principle of *transit in rem judicatam*, does not apply—until the judgment be made productive in satisfaction to the party. *Drake v. Mitchell*, 3 East 251; 2 Kent, 488; Cooley on Torts, 451.

## VII.

As this cause was not tried in accordance with the foregoing views, a reversal must occur; and we are asked in that event, to declare the true measure of damages in cases of this sort. The court below, at plaintiff's instance, gave this declaration of law on that point: " The measure of damages for the coal taken is the value thereof at the mouth of the shaft, less cost of raising it, and without any deduction for the expense of getting or severing it from the freehold." The report of the referee discloses that the coal was worth one-half a cent in the mine, and seven cents a bushel at the mouth of the shaft, or in the propor-

tion of one to fourteen. There is, doubtless, abundant authority which supports the above declaration of law. *Martin v. Porter,* 5 M. & W. 310; *Morgan v. Powell,* 43 Eng. Com. Law 734; *s. c.,* 6 Jur., part 1, 1109; *Barton Coal Co. v. Cox,* 39 Md. 1; *Robertson v. Jones,* 71 Ill. 405; *McLean Coal Co. v. Long,* 81 Ill. 359; Waterman on Tres., § 1096; *Moody v. Whitney,* 38 Me. 174; *Llynvi Co. v. Brogden,* L. R., 11 Eq. Cas. 188; *Wild v. Holt,* 9 M. & W. 672.

But there is no lack of authority sustaining a different view of the matter. *Stockbridge Iron Co. v. Cone Iron Works,* 102 Mass. 80; *Forsyth v. Wells,* 41 Pa. St. 291; *Chamberlain v. Collinson,* 45 Iowa 429; *Waters v. Stevenson,* 13 Nev. 157; *Foote v. Merrill,* 54 N. H. 490; *Maye v. Tappan,* 23 Cal. 306; *Goller v. Fett,* 30 Cal. 481; *Ham v. Sawyer,* 38 Mo. 37; *Hilton v. Woods,* L. R., 4 Eq. Cas. 432; *Baldwin v. Porter,* 12 Conn. 473; *Curtis v. Ward,* 20 Conn. 204; 2 Greenleaf Ev., §§ 253, 254; *Pierce v. Benjamin,* 14 Pick. 356; *Wood v. Moorewood,* 3 Q. B. 440; 3 Ad. & Ell. 810; *In re United Merthyr Coal Co.,* L. R., 15 Eq. Cas. 46. Thus in the case cited from Pennsylvania, it is remarked: "Where there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury is the purpose of all remedies; and so long as we bear this in mind, we shall have but little difficulty in managing the forms of actions so as to secure a fair result. If the defendant was guilty of no intentional wrong he ought not to have been charged with the value of the coal after he had been at the expense of mining it; but only with its value in place, and with such other damages to the land as his mining may have caused." So in the Massachusetts case it was said: "The value of the ore is to be estimated as it lay in the bed, and not as it was after defendant had increased its value by removing it. To this is to be added the damage done to the real estate." And in the Nevada case it was ruled that in the deductions made for the defendant's expenses, the necessary cost of mining the ores, was to be added, and the sum total subtracted from the

35—72

gross yield of the ore, the court saying: " We are of opinion that in all actions sounding in tort, no fraud or culpable negligence appearing, the aim of the law is to award to the injured party full compensation for his actual losses, as the law defines those words, and nothing beyond that amount."

Similar enunciations as to the measure of damages occur in the cases instanced from Iowa, California and New Hampshire; and in the somewhat recent case of *In re United Merthyr Coal Co.*, *supra*, decided in 1872, the vice chancellor, Sir James Bacon, said: " The principle of the decision is, that the plaintiff, although he has suffered a wrong, shall not have any more than he would have had if that wrong had not been committed. That I take to be a clear and plain principle. If he had himself severed the coal, he could only have done so by means of disbursements. If he had brought it to the pit's mouth when severed, he could only have done so by means of disbursements. If he had himself severed and brought the coal to the pit's mouth, whatever the value of it might then be would have to be deducted, because he would have borne the expense on both these heads, which would have been actual disbursements, not profit.     *     *     The plaintiff is to be put in the same situation as he would have been in, neither better nor worse, if he himself had severed the coal and brought it to the pit's mouth." And in the absence of any suggestion of fraud, it was ordered that the expense of severing the coal and bringing it to the pit's mouth, should be deducted from the value of the coal thereat, and the defendant made answerable to the plaintiff for the residue.

Mr. Greenleaf holds similar views respecting the point of damages in general, saying: "Damages are given as a compensation, recompense or satisfaction to the plaintiff, for an injury actually received by him from the defendant. They should be precisely commensurate with the injury; and this whether it be to his person or estate." *Ubi, supra.* The same view is taken in Connecticut. "No good

reason, consistently with moral principle, can be suggested why greater damages should ever be recovered than have in truth been sustained, except in those cases where the law permits, by way of punitive justice, the recovery of vindictive damages." 12 Conn., *supra*. The authorities from which we have quoted, seem to us to announce the true measure of damages, where there is no element of willfulness or wrong or such gross negligence or disregard of others' rights as leads necessarily to the inference of will-fulness or wrong; because a party engaged in mining may readily ascertain by proper dealing that he is trespassing on his neighbor's property.   9 M. & W. and 39 Md., *supra*.

In England, and in some of our sister states, the result reached in cases of the character under discussion, and which gave origin to the rule which plaintiff invokes, is no doubt owing to technicalities from which we happily are freed, since we have but one form of action in this State, and consequently are not hampered by mere matters of form in seeking redress for injury done.   This being the case, there would seem to be neither reason, justice, nor consistency in paying a party for his labor in raising the coal to the mouth of the shaft, and paying him nothing for his labor in severing it from the freehold; *i. e.*, in getting it into such condition that it could be delivered at the mouth of the shaft.   If the labor of the trespasser deserves compensation in one instance, why not in another?   By the operation of what principle based upon common sense, can you thus apportion the injury done; pay for its continuation, but deny pay for its inception?   This action is brought for treble damages under the statute, (1 R. S. 1879, § 3921,) which evidently gives recognition to the proper distinction to be taken between acts of unintentional and acts of intentional and flagrant wrong, (Ib., 3924,) and thus far is in accord with the views hereinbefore expressed.   We reverse the judgment and remand the cause, with directions to proceed conformably hereto.   All concur.