CHARLES D. RITCHIE and LILLIAN M. RITCHIE, Plaintiffs, Appellants, v. STATE BOARD OF AGRICULTURE, et al., Defendants, STATE BOARD OF AGRICULTURE, Appellants.*

Kansas City Court of Appeals. December 1, 1924.

1. **LANDLORD AND TENANT: Leases: Lease Must be Construed with Reference to Intention of the Parties.** A lease must be construed with reference to intention of the parties at the time it is made, rather than to any particular words which they may have used in the expression of their intention.

2. ————: **Tenant not Permitted to Use Land in Manner Inconsistent with Contract under Which His Lessor Holds.** Tenant not permitted to use land in a manner inconsistent with contract under which owner of his lessor holds.

3. ————: **Lease Held Intended by Parties as a Lease for Farming Purposes Only.** Lease designated as "farm lease," giving lessees right to plant ground in any way except in kaffir corn and cane, and providing for compensation for crops in case land was sold by lessor, *held* intended by parties as a lease for farming purposes only.

4. ————: **Sublease for Purposes Other Than Those Authorized in Original Lease Held Void and Sublessees Entry upon Land Unlawful.** A sublease entered into by lessee, holding under lease for farming purposes only, which did not restrict sublessee's use of land in any way, and under which sublessee constructed roads upon land and used same for public camping purposes and storage of automobiles, *held* void and sublessee's entry upon land unlawful and without any right.

5. ————: **Though Lessee in Possession of Land, Landlord May Sue Wrongdoer in Trespass for Damage to Freehold.** Though lessee was in possession of land at time trespass was committed, landlord may

bring suit for trespass against the wrongdoer, a stranger, for injuries to freehold.

6. **DAMAGES: Trespass: Measure of Damages for Injury to Land is Difference Between Market Value Before and After Injury.** Measure of damages for injury to freehold, is not reasonable value of damage done to land, but difference between the market value immediately before and its market value immediately after injury.

7. **————: ————: Admission of Evidence as to Damage to Land Without Relation to Decrease in Market Value Caused Thereby Held Erroneous.** In an action for trespass upon land, admission of evidence as to how much the land was damaged by defendant without any relation to the decrease in the market value of land caused thereby, *held* error.

8. **INSTRUCTIONS: Instruction Held Erroneous as Stigmatizing Action of Defendant as a Trespass.** In an action for trespass against sublessee an instruction that contract entered into by original lessees "who occupied premises in question at time of commission of trespass complained of should not be considered by them," *held* erroneous as stigmatizing action of defendant as a trespass.

9. **LANDLORD AND TENANT: Landlord Not Entitled to Recover in Trespass for Bare Entry upon Land.** Landlord not entitled to recover in trespass for bare entry by sublessee upon land to which lessee was entitled to possession.

10. **INSTRUCTIONS: Not Error to Refuse Instructions Covered by Others.** Refusal to give instructions covered by others not error.

11. **TRESPASS: Damages: Treble Damages Can Only be Recovered for Statutory Trespass.** Under section 4242, Revised Statutes 1919, permitting recovery of treble damages for trespass in the digging up or carrying away of any substance or material such as stones, ore, mineral, ice, fruits, etc., being part of the realty, *held* such damages can only be recovered for statutory trespass and merely a digging up of soil itself and other injuries, do not justify recovery thereof.

---

*Corpus Juris-Cyc. References; Courts, 15 C. J., p. 970, n. 31. Landlord and Tenant, 35 C. J., p. 1175, n. 91, 92, 93, 95; p. 1176, n. 98, 99, 1; p. 1219, n. 39; p. 1220, n. 60; p. 1224, n. 31; 36 C. J., p. 87, n. 41, 42; p. 94,' n. 22; p. 98, n. 88. Trespass, 38 Cyc., p. 1008, n. 6; p. 1050, n. 38; p. 1113, n. 68; p. 1126, n. 12; p. 1164, n. 46. Trial, 38 Cyc., p. 1674, n. 61 New; p. 1711, n. 19.

Appeal from the Circuit Court of Cooper County.
—*Hon. John G. Slate,* Judge.

REVERSED AND REMANDED.

*Lamm & Lamm* and *Bohling & Bohling* for plaintiffs appellants.

*Montgomery & Rucker* for defendants appellants.

BLAND, J.—This is an action for trespass by defendant upon the land of plaintiffs. There was a verdict and judgment for plaintiffs awarding single damages in the sum of $500. Both parties have appealed; plaintiffs because the court refused to treble the damages.

Plaintiffs, husband and wife, were the owners of forty acres of land in or near the City of Sedalia. The land was leased by plaintiffs to one Culp and wife, said lease was in writing and designated a "farm lease." The land was leased for a term of one year beginning March 1, 1921, at a rental of $500. The lease provided that the lessees should—

". . . have the right to plant said ground in anything they desire except kaffir corn and cane, which seed and crop they are by this lease absolutely forbidden for the reason that said first party considers it very injurious to said soil.

"It is hereby stipulated and agreed that if the said second parties plant twenty (20) acres of said ground in wheat in the fall of 1920, and in the event that the said party should sell or convey or contract to sell and convey said land to any party or parties he hereby agrees to pay said second parties the sum of two hundred ($200) dollars in cash for a release of this contract and of the turning over and delivering the said twenty (20) acres of wheat so sown on said ground, it being understood that the said second parties are to plow, put in condition and sow one and one-fourth bushels of seed wheat per acre

and use 125 pounds of fertilizer per acre on said wheat land.''

On August 1, 1921, the defendant was, and had been, preparing for the Centennial anniversary of the admission of the State into the Union and on that day instituted condemnation proceedings against plaintiffs to condemn said land for State Fair purposes. On August 6th a conference was held between plaintiffs and their attorneys and attorneys of defendant, at which defendant sought to secure permission from plaintiffs to use the land in question for purposes for which it was thereafter used, but such permission was refused. Thereupon counsel for defendant advised their client that the Culps under the terms of their lease had the right to grant defendant permission to use the land for the purposes desired. This resulted in negotiations and on August 7th a contract between the Culps and defendant was entered into, which was reduced to writing on August 8th. Under this contract defendant took possession on August 7th of the east twenty acres of the land in question and continued in possession until August 20, 1921. Defendant's contract with the Culps recited that in consideration of the sum of $250 paid by the defendant to the Culps the latter did ''hereby let and sublet to the party of the first part'' the east twenty acres of the land in question. The agreement further recites that defendant—

''. . . covenants and agrees to fully protect the parties of the second part from any loss, costs, damages, or expenses that may be incurred or which they may suffer by reason of any suit or litigation by his landlord, Charles D. Ritchie and Lillian M. Ritchie, or any one under their direction or by their authority touching the use of said ground under this lease made to the party of the first part.''

Defendant removed the fences on the east and north sides of the twenty acres, graded a road across the land, cutting it into two approximately equal parts, and on the east side thereof erected tents, electric light poles, com-

fort stations and other conveniences for campers. The first week of the celebration was devoted to the Centennial and the second to the State Fair. Heavy rains occurred during Fair week and the ground became very soft and muddy. During this time a large number of automobiles were parked on the twenty acres and many visitors occupied tents on the premises, most of them doing their own cooking. A grader was used in constructing the road and fences were opened at both ends thereof and ditches eight to twelve inches in depth were made at the side of the road; deep holes were dug for the erection of electric light poles and tents, about 200 in number, staked down. The soil was covered with sub-soil by the grader and some of the soil was washed away. After the close of the celebration the fences were removed by the defendant, the ground leveled off, and an attempt made by it to restore the ground to its original condition. Plaintiffs' evidence tends to show that this effort was not successful; that the road was still visible after the land had been sown in wheat; that some of the tent stakes had not been pulled out but remained in the ground, thus interfering with the successful cultivation of the land.

It is insisted that the court erred in failing to give defendant's instruction in the nature of a demurrer to the evidence; that the petition alleges that defendant entered upon the land without right and had no interest of any kind or character in the premises; that as defendant had a valid sublease it thereby acquired the right to take possession of the land and that its original entry having been lawful, anything committed after its entry injuring the land was a commission of waste and could not be recovered under the petition in this case. We do not think that defendant had a valid sublease of the land.

"The object in construing a lease is to ascertain and give effect to the intention of the parties, without regard to the refinements of technical distinctions, in so far as that may be done without contravention of legal principles. The intention of the parties is to be

gathered from the words which have been employed in connection with the subject-matter, the object and purpose of the lease, and the surrounding circumstances. Such intention is to be gathered from the whole instrument rather than from a single clause thereof. Greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intention. A lease must be construed with reference to the intention of the parties at the time it is made. The intention of the parties to a lease delivered subsequent to its execution is to be determined as of the date of delivery.'' [35 C. J., pp. 1175, 1176, par. 461.]

''A tenant will not be permitted to use the land in a manner inconsistent with a contract entered into by the owner, under whom he claims, and with notice of which he took. He is chargeable with notice of restrictions upon the use of the premises in the title of his landlord with which by reasonable diligence he ought to have been acquainted.'' [36 C. J., p. 87, par. 715.]

The question, then, is what was the character of the lease between plaintiffs and the Culps. It does not recite that it was for farm purposes but it is quite apparent that it was the intention of the parties that the forty acres were leased for farm purposes only. It is headed ''Farm Lease'' and recites that the lessees should have the right to plant the ground in any way they desired except in kaffir corn and cane, which were absolutely forbidden for the reason that this was considered by the landlord as injurious to the soil. It also provides that in case the land was sold by the lessor and the twenty acres had been planted in wheat, the landlord agreed to pay the lessees $200 for a release of the contract and the turning over of the wheat.

We think there is no question but that plaintiffs leased the forty acres to the Culps for farm purposes, therefore the Culps had no right to sublease it to the defendant for other purposes, whereas in fact they did sublet a portion of the land to the defendant by written

contract in which the use of the land was not restricted in any way whatsoever. Under such circumstances the sublease was void and there is no doubt but that defendant's original entry upon the land was unlawful and without any right.

It is insisted, however, that under the ruling of the Supreme Court in Moore v. Guardian Trust Co., 173 Mo. 218, the Culps had a right to sublease the property for any purpose they saw fit. In that case an office building known as the Temple Block in Kansas City was leased to the Board of Trade of that city. The lease provided that a portion of the building should be remodeled by the lessors for a trade room for the Board of Trade and that the Board should have the privilege of subletting any portion of the premises and to cause at its own expense such changes by way of partition or otherwise as it might deem proper under the supervision of the lessors. The Board of Trade did not take possession of the premises but remained at its old location and the lessors wrote tendering to the Board of Trade the building "to be used and occupied by the members of the Board of Trade Association for purposes of such business as is usually carried on and transacted by your association and the members thereof." The Supreme Court held that the lessors had no right in making this tender to so limit the uses to which the premises might be put; that is, to such business as was usually carried on by the association and its members. The court said, at l. c. 244, that under the terms of the lease the Board of Trade was not restricted to the use mentioned in the tender of the building by the lessor but had a right to sublet to whom it chose and to use the building for any purpose it saw fit. The main distinction between that case and this is that it fairly appears in the case at bar that the original lease was for farm purposes ouly while in the Moore case the lease did not restrict the use of the building to the purposes mentioned in the tender.

However, the language of the court in the Moore case must be construed in connection with the matter

before the court for decision. The Board had entered into a contract with a trust company, the defendant in that case, which had acquired the premises which the Board occupied at the time it entered into the lease. In this contract the Board agreed to remain and not move to the Temple Block and the trust company agreed to assume the lease that the Board of Trade had with the owners of the Temple Block and sought to take over the management of the Temple Block and rent out the offices therein but the lessors refused to permit this. The Supreme Court was merely saying that the Board of Trade was not restricted in the use of the building to the terms of the tender made by defendant to the lessors but could use it for other purposes. However, had the Board of Trade attempted to use the building, which was an office building, for a factory, a garage, or a hospital for contagious diseases, of course, no court would have held that the lease would permit any such use of the building. Nor do we think that in the case at bar the premises that were leased for farm purposes could be sublet or used by the tenant for camping purposes and the storage of automobiles involving the building of roads and the doing of other things that the evidence shows were done in this case. As before stated, the contract between defendant and the Culps did not restrict the use of the land in any way.

It is insisted that the petition fails to allege, and plaintiffs' evidence fails to show, that plaintiffs were in possession of the real estate at the time the alleged trespass was committed; that the evidence shows that plaintiffs' tenant was in possession and that as the action of trespass is for an injury to the possession, plaintiffs are not entitled to recover. However, the rule is well settled that where the injury is to the freehold the landlord may bring a suit for trespass against the wrongdoer, a stranger, who injures such freehold. [Fitch v. Gosser, 54 Mo. App. 267; Parker v. Shackleford, 61 Mo. 68, 72; Cramer v. Groseclose, 53 Mo. App. 648, 650; Bailey v.

The Siegel Gas Fixture Co., 54 Mo. App. 50; Ridge v. Railroad Transfer Co., 56 Mo. App. 133; Arnold v. Bennett, 92 Mo. App. 156; Thurmond v. White Lime Association, 125 Mo. App. 73, 76.] In this case the damage was to the freehold.

Plaintiffs' instruction C was erroneous. This instruction covers the entire case and tells the jury that if it finds the things herein hypothecated, defendant "is liable to plaintiffs for the reasonable value of the damage done to the soil of said land." This is not the measure of damages in a case of this kind but the true measure of damages is the injury to the market value of the land, that is, the difference between the market value immediately before and its market value immediately after the injury. [Doty v. Railroad, 136 Mo. App. 254, 259; Cox v. Railroad, 111 Mo. App. 394, 406; McKinzie v. Guthrie, 212 S. W. 563.] For the same reason the court erred in permitting plaintiffs' witnesses, over defendant's objection, to state how much the land was damaged by the making of the road and the doing of the other things by defendant without any relation to the decrease in the market value of the land by reason of the doing of those things.

Complaint is made of plaintiffs' instruction No. 1, which told the jury that the contract entered into between defendant and the Culps "who occupied the premises in question at the time of the commission of the trespass complained of should not be considered by them." From what we have said this contract was no defense but the jury might have misunderstood the language of the court in telling them that defendant had committed a trespass. The Culps were in possession of the premises and plaintiffs had no right to recover for a bare entry [Thurmond v. White Line Ass'n., supra.] Before plaintiffs were entitled to recover, the jury must have found an injury to the freehold, and this was a disputed question. The court therefore should not have stigmatized the action of the defendant as a trespass. Plaintiffs' rights

were not invaded unless there was an injury to the free-hold.

We fail to see how the defendant can complain of the refusal of the court to give its instruction 1-A as a like instruction was given with a modification that was clearly to defendant's advantage. Defendant seems to have two instructions worded exactly the same, these instructions are numebred 2 and 2-A. 2-A was refused but 2 was given, yet defendant complains of the refusal to give its instruction 2-A. From what we have said the court did not err in refusing to give defendant's instruction 3-A, limiting plaintiffs' recovery to nominal damages.

The petition asks for treble damages which can only be recovered, if at all of a defendant of this kind, for a statutory trespass. [Section 4242, Revised Statutes 1919.] Defendant was not guilty of the things mentioned in that statute. That statute provides for treble damages for the digging up or carrying away of any *substance* or *material* such as stones, ore, mineral, gravel, clay, mold, ice, roots, fruits or plants, being a part of the realty. Here there was merely a digging up of the soil itself and other injuries to it thereby injuring the free-hold.

The judgment is reversed and the cause remanded. All concur.