### WHITE et al. v. BARTON et al.

### No. 7271.

Springfield Court of Appeals. Missouri.

June 16, 1954.

Mo.App., 87 S.W.2d 218, 222; Section 480, Restatement of Law of Torts.

V. Alexander, Jr., Memphis, Tenn., James Haw, Charleston, for appellants.

Joslyn & Joslyn, Charleston, for respondents.

McDOWELL, Presiding Judge.

This action is under the declaratory judgments act, V.A.M.S. 527.010 et seq., to have determined the rents due plaintiffs under a written lease made with defendants for the year 1951. The cause was tried in the Circuit Court of Mississippi County, Missouri, and judgment rendered for defendants. Plaintiffs appealed.

The petition is based upon a farm lease. It alleges plaintiffs were owners of 1335 acres of land in Mississippi County and that in September, 1950, they entered into a lease agreement with defendants whereby they let to defendants the lands for four years beginning January 1st, 1951, and ending January 1st, 1955. Among the crops to be grown was cotton. The petition alleged that defendants were to plant annually a certain per cent of the acreage leased to cotton and agreed to pay 100 pounds, net weight, of lint cotton per acre; that the rent was to be out of the first cotton picked, was to be delivered to plaintiffs at East Prairie by the surrendering to plaintiffs insured warehouse receipts without liens. The petition states that defendants failed to deliver 100 pounds of lint cotton, "net weight" and set out the amount of rents due each plaintiff and prays judgment for the amount plus penalties of 10% as provided in the lease and for interest.

The amended answer of defendants pleads compliance with the lease contract and denied the allegations of plaintiffs' petition.

The judgment of the trial court was for defendants "that under the contract sued on the term net weight, picked lint cotton is construed to mean the weight of cotton as shown by insured warehouse receipts."

The facts are undisputed. While the lease covered the growing of a number of different crops, all have been settled but

the cotton rent. The dispute between the parties is as to the meaning of the term, "net weight" of picked lint cotton contained in the written lease.

Plaintiffs contend that the term "net weight" obligated defendants to deliver 100 pounds "net weight" of picked lint cotton to them evidenced by insured warehouse receipts and that the weight of bags and ties must be excluded from such weight of bales in determining the rent.

Defendants contend that it was the intention of the parties under the lease that defendants should deliver to plaintiffs warehouse receipts showing the number of pounds of cotton due plaintiffs as rent; that bagging and ties are considered cotton. Defendants state they have paid to plaintiffs all rent due them under the terms of the lease.

The written lease is in evidence and provides: " * * * then for that year the amount of cotton to be paid first parties as rent on each of said farms for that year shall be 100 pounds, net weight, picked lint cotton times the acreage allotment established for each of such farms for that year. Said amount of picked cotton shall be the first cotton harvested from each of said farms for that year and shall be immediately delivered to first parties in East Prairie, Missouri by the surrender of insured warehouse receipts free of any liens * * *."

The written lease provides that if the defendants fail to pay the rent plaintiffs may purchase on the market the amount of cotton not so paid or they may collect the market value of such undelivered rent determined by the price of cotton on the St. Louis or Memphis market on November 1st or December 1st.

It is admitted that if plaintiffs' contention as to the meaning of the contract, that is, that defendants were obligated to deliver warehouse receipts to plaintiffs for 100 pounds of picked lint cotton, less bagging and ties used in the baling of such cotton, plaintiffs are entitled to recover a judgment

for the amount sued for together with penalties and interest.

It was agreed that the bagging and ties on each bale of cotton weighs 22 pounds.

Defendants' testimony shows that cotton is bought and sold on the market by weight of the bale, which includes the bagging and ties. Bagging and ties are never considered separate when cotton is bought and sold. The witnesses testified they never heard of the use of net weight in the handling of cotton.

Warehouse receipts show on their face the date of entry into the compress, the name of the producer and the weight put there by a licensed government weigher.

The language of the lease used in the case at bar which we are called upon to construe reads: "the amount of cotton to be paid first parties as rent * * * shall be 100 pounds, net weight, picked lint cotton times the acreage * * * delivered to first parties in East Prairie, Missouri by the surrender of insured warehouse receipts free of any liens * * *."

The object in construing a lease is to ascertain and give effect to the intention of the parties—that intention is to be gathered from the words which have been employed in connection with the subject matter, the object and purpose of the lease and the surrounding circumstances. The intention is to be gathered from the whole instrument rather than from a single clause thereof. Greater regard is to be had to the clear intention of the parties than to any particular words which they may have used in the expression of their intention. A lease must be construed with reference to the intention at the time it is made. Ritchie v. State Board of Agriculture, 219 Mo.App. 90, 266 S.W. 492, 494.

Examining the words used we find that the rent was required to be delivered to first parties by the surrender of insured warehouse receipts free of liens. Warehouse receipts for cotton show on the face the name of the producer, the date it entered the compress and the weight put on

**676**

there by a licensed weigher for the Government. Such warehouse receipts do not show how many pounds of the bale are bagging and ties. It does not show any of the weight is bagging and ties. It merely shows that the bale of cotton weighs so much.

In passing upon the issues raised in this cause we will refer to appellants as plaintiffs and to respondents as defendants.

Plaintiffs' first allegation of error complains that the trial court erred in finding that the term "net weight lint cotton" as used in the lease does not mean lint cotton exclusive of bagging and ties.

Our attention is first called to the definition of "net". The word is defined as free from all deductions, clear of all extraneous matter. Black's Law Dictionary, 3rd Edition, page 1239; 66 C.J.S., Net, page 7; State ex rel. City of St. Louis v. Laclede Gas Light Co., 102 Mo. 472, 14 S.W. 974, 15 S.W. 383.

In Greene County Building & Loan Ass'n v. Milner Hotels, Inc., 240 Mo.App. 1048, 227 S.W.2d 111, 122, this court held:

"In determining the rights of the parties under the lease in question, it becomes the duty of this court to determine the mutual intent of the parties from the language used in the lease in its plain and ordinary sense in connection with the subject matter and the surrounding circumstances giving greater regard to the clear intention of the parties than particular words which they may have used in the expression of their intention. It is not the province of the court by construction to make a new contract for the parties to the lease or to supply any material stipulations or conditions which contravene the agreements of the parties. Therefore, we will determine the intention of the parties from the words which have been employed in connection with the subject matter, the object and purpose of the lease and the surrounding circumstances. In determining this intention we will consider the

instrument as a whole and not from a single clause thereof, as well as the conduct of the parties themselves in carrying out the terms of the lease. We must determine the meaning and intent of the parties as expressed in the language used and reach a construction that is fair and reasonable under all the facts and circumstances, considering the relationship of the parties, the subject matter of the contract, the business and circumstances attending the execution of the contract and its interpretation by the parties."

In Tureman v. Altman, 361 Mo. 1220, 239 S.W.2d 304, 309, 26 A.L.R.2d 729, the court stated the law:

"* * * Pomeroy, Specific Performance, Sec. 151, p. 386. 'It is to be presumed that the parties contracted with reference to fair, reasonable, and practical results, and the language employed by them should have a fair, reasonable, and practical construction. While equity does not make contracts for parties, it gives construction (force) to contracts which parties make for themselves, * * *' * * *"

In 12 Am.Jur. p. 772, 773, § 241, the law is stated:

"An agreement should be interpreted as a whole and the meaning gathered from the entire context, and not from particular words, phrases, or clauses. In fact the entire agreement is to be considered to determine the meaning of each part. All provisions should, if possible, be so interpreted as to harmonize with each other."

In 32 Am.Jur. p. 130, 131, § 127, the law is stated:

"As in the case of contracts generally, a cardinal principle in the construction of leases is to give effect to the intention of the parties as manifested by the words used. A court is not at liberty to read into a lease a meaning which the parties did not in-

tend, or which they did not express in the language used, and should, if possible, in interpreting the language used, give each word or phrase its ordinary meaning, in a business sense, at the time the lease was made. The words used must be given a reasonable construction—if possible, one which will not give to one of the parties an unfair or unreasonable advantage over the other. * * *

"In arriving at the intention of the parties to a lease, the subject matter, the surrounding circumstances, the situation of the parties, and the object had in view and intended to be accomplished by the parties at the time are to be regarded. Also, when possible, all the words and all the clauses of the lease are to be given effect and the lease construed as a whole. * * *"

■ Thus, under the plain and ordinary meaning of the words used in the lease plaintiffs required the number of pounds of cotton be delivered to them as shown by warehouse receipts. Such meaning would be contrary to the technical meaning of rent reserved, 100 pounds, net weight,— net weight meaning the exclusion of containers and packing. Interpreting the language of the lease as a whole and in the light of the subject matter to determine the intention of the parties, we find that cotton can only be handled by having it ginned and baled; that when the lease was made the parties knew there was but one way cotton could be delivered as rent, that is, in the bale. They knew that when cotton is baled for marketing the number of pounds expressed on the bale ticket includes bagging and ties; that the party having the cotton baled pays so much a pound for baling the lint and so much for bagging and ties. No one knows how much the bagging and ties weigh exactly. When this cotton is sold the buyer pays the seller for the number of pounds of cotton shown on the warehouse receipt. The evidence shows this to be the only way cotton is harvested and marketed in this country and that is the understanding of cotton raisers and cotton buyers. We admit it is unusual to have terms used in a lease, "net weight", yet, we held that the trial court was justified in finding for defendants that under the contract sued on, the term "net weight" picked lint cotton should be construed to mean weight of cotton as shown by the insured warehouse receipts.

It will be noted that by the terms of the lease, plaintiffs reserved the right, where defendants failed to deliver the rent, to determine the value of the cotton rent due by price of cotton on the market. Would they determine that value by the price paid by the bale or net weight? Would they have said that they were entitled to 104½ pounds as in the bale or would they have considered the price on 100 pounds as provided in the lease? The whole lease contract read together clearly shows that plaintiffs intended to collect 100 pounds of lint cotton as rent and that meant cotton baled, which included the bagging and ties.

We find against plaintiffs on their first assignment of error.

Plaintiffs' allegation of error numbered II complains of the action of the trial court in admitting the testimony of E. L. Barnes. Plaintiffs fail to point out what the testimony was that they complain about but they say the testimony was inadmissible because parole evidence cannot be admitted to vary the terms of a written contract and cited much authority.

An examination of the authorities cited reveals that they are not in point under the facts in this case.

The Supreme Court said in Gabel-Lockhart Co. v. Gabel, 360 Mo. 518, 229 S.W.2d 539, 543:

"The meaning of the term 'net profits' should be accepted and the contract construed according to the contracting parties' intention. It has been said that, in construing a contract of doubtful meaning, the court must give such a construction as will be fair and reasonable. In reaching a construction

'that is fair and reasonable under all the facts and circumstances, the court may consider the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties.'

* * * "

█ The testimony of the witness complained of was admissible to show the usages of the cotton business and the manner of handling the subject matter. We find against plaintiffs under allegation of error numbered II.

█ Under allegation of error numbered III we agree with the abstract statement of law made. The appellate courts have the power to correct the error made by the lower court and could, if the facts justified, render such judgment as the lower court should have rendered.

Judgment affirmed.

BLAIR and STONE, JJ., concur.