**Jewel M. WILSON and Ada V. Wilson, Plaintiffs-Respondents,**

v.

**E. V. EDWARDS, Defendant-Appellant.**

**No. 10424.**

Missouri Court of Appeals, Springfield District.

Jan. 4, 1978.

James R. Robison, Robison & Blanton, Sikeston, for plaintiffs-respondents.

Garry E. Champion, Fielding Potashnick, Sikeston, for defendant-appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

BILLINGS, Chief Judge.

Suit for specific performance of a contract for the sale and purchase of land. The trial court entered a decree requiring defendant to execute and deliver a deed within fifteen days after plaintiffs paid the purchase price to the clerk of the court. Failure of defendant to deliver the deed would result in a judgment of conveyance. We affirm.

The subject of the lawsuit is 64.4 acres of land located in Mississippi County, Missouri. By a general warranty deed, dated June 30, 1950, this land was conveyed by John and Irene Hodges to Ova and Maud Edwards, defendant's parents. The deed used typical fee tail language, "Ova Edwards and Maud Edwards, husband and wife for their life and to the heirs of their body." By statute, this created a life estate in Ova and Maud Edwards and a contingent remainder in defendant, E. V. Edwards, their only child, leaving a reversion interest in the grantors. § 442.470 RSMo 1969; *Mattingly v. Washburn*, 355 Mo. 471, 196 S.W.2d 624 (1946).

In 1959, defendant became involved in a transaction to exchange farms with a Mr. Guilings. Defendant's Mississippi County farm was to be traded for Guilings' Scott County farm provided a buyer could be found for the Mississippi County land. Defendant's farm included the 64.4 acre tract. Royal Kellett, a realtor, was retained by defendant to locate a purchaser for the land.

Plaintiffs, Jewel and Ada Wilson, were looking for a farm to buy during this time. They met Royal Kellett who learned of their interest in purchasing a farm and informed the Wilsons four or five days later about the Edwards' land being for sale. Subsequently, Edwards met with the Wilsons and discussed the sale of a 400 acre farm at a purchase price of $350 per acre.

In June, 1959, Wilson went to look over the farm and estimated that it was about 400 acres. Approximately a week later, during a second inspection, with Edwards present, Wilson told Edwards he would purchase the farm. Prior to executing a written agreement, however, Wilson refused to take the farm because Edwards was unable to convey 400 acres. Ultimately the parties agreed that Wilson would purchase 333 acres and take a lease on the remaining acres, with an option to purchase.

Defendant's attorney prepared a lease/option agreement dated July 1, 1959, covering the 64.4 acres. It was executed by Edwards and plaintiffs. Under the provisions, the lease term was for two years beginning January 1, 1960, and the option to purchase the land for $350 per acre was exercisable at any time during the term.

Wilson alleged he told Edwards immediately after executing this first agreement that he had made arrangements and wanted to purchase the tract. A month after execution, defendant learned he could not produce fee simple title because of the language of the 1950 deed to his parents. Edwards continued to accept the rent on the land and did not inform the Wilsons of the title problem until January, 1961, when plaintiffs attempted to exercise their option. Edwards then told the Wilsons he could not sell the land due to the way it was deeded; that he could not convey title until after his mother died.

To correct this problem, Edwards and the Wilsons entered into a second lease/option agreement, prepared by Edwards' attorney, and executed February 28, 1961. This second agreement had the following relevant provisions.

"For the considerations and upon the terms and conditions hereinafter set out, first parties agree to lease and do hereby lease to second party the following described real estate:

All that part of the West Half of the Northeast Quarter lying South of railroad, less .33 of an acre for road right of way, in Section 13, Township 26 North, Range 14 East, in Mississippi County, Missouri, and containing 64.40 acres, more or less.

"1. This lease is to commence as of January 1, 1962, and is to terminate upon the termination of the life tenancy vested in first parties by virtue of warranty deed dated June 30, 1950, and Recorded in Book 154, page 5, in the Recorder's Office of Mississippi County, Missouri.

\*   \*   \*   \*   \*   \*

"4. As a part of the consideration herein second party shall have an option to purchase said real estate at any time during the term of this lease for $350.00 per acre or a total of $22,640.00, and in the event that second party should desire to exercise this option third party agrees.

\*   \*   \*   \*   \*   \*

(b) The conveyance is to be made by a general warranty deed conveying the land free and clear of all liens or incumbrances [sic] of every nature and kind, except taxes and special assessments for the current year and thereafter, it being understood that whoever received the rents for the year of transfer shall pay the taxes for that year.

\*   \*   \*   \*   \*   \*

"6. Third party is the only child of first parties above named and for the considerations mentioned herein agrees that he will carry out the terms of the above agreement between first and second parties upon the decease of the last survivor of his parents or when the time comes that he can make a deed in compliance with No. 4 above; should third party come into title in any year after March 15 he shall pay all taxes and receive all rents for that year in accordance with the above terms and second party shall have until the end of such year within which to make the payments for the land as above set out; upon the decease of the last survivor of first par-

ties herein at any time second party shall have not less than 60 day within which to raise the purchase price set out in No. 4 above.

\*   \*   \*   \*   \*   \*

/S/      Ove Edwards
             and
/S/      Maud Edwards
By E. V. Edwards Agent (First Parties)

/S/      Jewel M. Wilson, Ada V. Wilson
                  (Second Party)

/S/      E. V. Edwards
                  (Third Party)"

Although he had no written authority from his parents to sell the land or sign the agreement for them, defendant signed it for himself and on behalf of his parents. Defendant testified that he told his parents that he was selling the land and that they had given their consent.

Wilson testified he verbally attempted to exercise the option right after signing the contract, and again in May or June of 1961. He said each time Edwards said he could not give good title until after his mother's death. Edwards denied these conversations, but admitted telling Wilson in January, 1961 that he could not give legal title until his mother died.

In January, 1966, Wilson's attorney wrote defendant a letter concerning insurance proceeds when a house on the 64.4 tract was damaged by fire. Inter alia, the letter stated:

"This will further inform you that when the conditions set forth in the contract occur to enable Mr. Wilson to exercise his purchase option, that he will deduct from the purchase price such sum as he deems reasonable to represent the loss of the dwelling on the property which he has contracted to buy."

Under the 1950 deed, Edwards' parents had a life estate in the 64.4 acres. His father died in 1961, and his mother died December 14, 1974. When Wilson learned of Mrs. Edwards' death, he unsuccessfully tried to contact defendant by telephone to exercise the option. He then wrote a letter December 17, 1974, which was received by

defendant two days later, attempting to exercise the option. After this and subsequent notices, Wilson met Edwards February 10, 1975, and informed him he was ready to exercise the option to purchase the land. Defendant refused to convey the land, telling plaintiff to see Edwards' attorney. This suit followed.

■ An option is a continuing offer by which the owner agrees to give another the exclusive right to buy property at a fixed price within a specified time. It is a privilege, a right of election to exercise a privilege. The purpose is to bind the owner of the land, for valuable consideration, not to withdraw the offer for sale during the fixed period. Upon the optionee's acceptance the option becomes a complete bilateral contract, supported by mutual promises, and is specifically enforceable. *Lively v. Tabor*, 341 Mo. 352, 107 S.W.2d 62 (1937); *Frey v. Yust*, 516 S.W.2d 321 (Mo.App. 1974).

The controlling issue is whether plaintiffs timely exercised the option to purchase the land. Defendant contends the option could only be exercised during the term of the lease. Plaintiffs argue, and the trial court found, it was exercisable by them upon the death of defendant's mother when defendant could convey the land by general warranty deed.

■ The general rule is that the time prescribed for exercise of an option is of the essence, and if the option is not exercised within the time limited all rights of the optionee stand forfeited without notice. *Lusco v. Tavitian*, 296 S.W.2d 14 (Mo.1956). In this case time would not appear to be of the essence, especially since the exercise of the option was dependent upon the death of the surviving life tenant.

■ If, as defendant contends, plaintiffs' acceptance was required during the lifetime of the surviving life tenant, delay in their performance was excusable due to the irremedial defect of defendant's title. *Hellrung v. Hoechst*, 384 S.W.2d 561 (Mo.1964). Upon the exercise of the option, defendant was obligated to convey the land by general warranty deed, free from all liens and encumbrances. During the term of the lease, it was impossible for defendant to perform his part of the bargain by conveying fee simple because he possessed only a contingent remainder. Defendant told plaintiffs he could not convey the premises until after his mother's death. An attempted exercise of the option by plaintiffs would have been a vain act, although there was evidence plaintiffs attempted to exercise their power of acceptance. This inability of defendant to perform and the resulting consequences were attributable solely to defendant.

■ Defendant is not in a position to demand strict performance of the agreement by plaintiffs. The vendor is not entitled to forfeit the contract as against the vendee, when he is himself in no condition to perform, even though by the terms of the contract he has a right to decree it forfeited. The inability of defendant to perform waives strict performance of the contract by plaintiffs. Grismore, Law of Contracts, § 153 at 228 (1947). The time limit in the option being rendered inoperative by defendant's action, plaintiffs are not bound by it. Defendant was required to comply with the contract as soon as he was able to do so.

■ In deciding when the option was to be exercised, we must determine what the parties intended. The lease/option agreement is construed as a whole in order to ascertain and give effect to their intention at the time it was made. This intention may be gathered from the language employed, the acts of the parties, and the surrounding facts and circumstances attendant on the transaction. *Ferguson v. Gulf Oil Corp.*, 382 S.W.2d 34 (Mo.App. 1964); *White v. Barton*, 269 S.W.2d 673 (Mo.App.1954).

■ From the language in the instrument, it is reasonable to conclude, as the trial court did, that the parties intended the option to be exercisable at the death of the surviving life tenant. Paragraph 4(b) obligated defendant to convey the premises free from all liens and encumbrances by

general warranty deed. Defendant's ability to comply with the provision by conveying the fee was by law conditioned upon his surviving his parents, since they had life estates in the tract and he had only a contingent remainder. Paragraph 6 recognized defendant's contingent interest and the legal problems in conveying the fee to the land. For himself and his parents, he specifically agreed to carry out the terms of the agreement, "upon the decease of the last survivor of his parents or when the time comes that he can make a deed in compliance with No. 4 above . . . ."

The surrounding facts and circumstances lead to a similar conclusion as to the true intent of the parties. Defendant admits this agreement was to correct the situation that resulted from plaintiffs' exercise of the option under the prior contract and his inability to convey the full legal title. He acknowledges telling Wilson he could not convey the title to the 64.4 acre tract until after his mother died.

Defendant is not prejudiced nor damaged by a decree of specific performance. He admits that the price for the 64.4 acres, established when the agreement was made, was a fair one. If the contract is enforced, both parties are getting exactly what they contracted for, plaintiffs get the land, defendant gets the stipulated consideration and a delay in performance until after his mother's death. The trial court acted properly in directing specific performance of the contract.

Judgment is affirmed.

All concur.