647 S.W.2d 179 (1983)
In re the ESTATE OF Thomas L. WEINSAFT, Deceased.
Nicholas L. WEINSAFT, Plaintiff-Respondent,
v.
Robert J. SMITH, Administrator, Defendant,
David A. Holberman, Intervenor-Appellant.
No. 12686.
Missouri Court of Appeals, Southern District, Division Two.
February 2, 1983.
Motion for Rehearing Overruled and to Transfer Denied February 14, 1983.
Application to Transfer Denied March 29, 1983.
*180 Glenn A. Burkart, Bruce E. Hunt, Mann, Walter, Burkart, Weathers & Walter, Springfield, for plaintiff-respondent.
Loren R. Honecker, Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, for intervenor-appellant.
Motion for Rehearing Overruled and to Transfer to Supreme Court Denied February 14, 1983.
PREWITT, Judge.
By written agreement dated January 10, 1972, Thomas L. Weinsaft (decedent) and Nicholas L. Weinsaft (plaintiff), decedent's son, agreed that plaintiff would have certain rights to purchase from decedent 765 shares of common stock of Crane Manufacturing Company, a Missouri corporation. The agreement provided that during decedent's lifetime he would not transfer any interest in the stock unless he first gave plaintiff an opportunity to purchase it and that upon decedent's death plaintiff "shall have the option and right to purchase all of the shares of said stock owned by First Party [decedent] from the executor, administrator, personal representative or heirs, as the case may be, under the terms of this agreement." Notice of the exercise of the option to purchase was to be given "within 30 days after the death of First Party."
Based upon the agreement, the trial court ordered the administrator to transfer the shares to plaintiff. Intervenor, a legatee, appeals. He contends in his three points relied on that the trial court erred: (1) because notice of the intent to exercise the option was not given within 30 days of decedent's death; (2) because the agreement *181 is unconscionable and not supported by sufficient consideration; and (3) because the agreement is void for "testamentariness".
We first consider point one. Decedent died on March 14, 1980. Two wills were presented for probate. The first dated November 13, 1979, was rejected and a will dated January 16, 1980, was admitted to probate. Neither will mentioned the agreement in question. The January 16, 1980, will named intervenor as executor and he applied for letters testamentary on April 3, 1980. On April 30, 1980, the Probate Division of the Circuit Court rejected intervenor's application and appointed William Wear, Jr., a Springfield attorney, as administrator. By letter of his attorney dated May 21, 1980, plaintiff gave notice of his intention to exercise the option and purchase the stock. It was the only notice attempted by plaintiff. Thereafter Wear resigned and the present administrator was appointed. The trial court determined that Wear received the letter within 30 days of his appointment and that under the circumstances here the notice was timely and it created a binding contract under which the administrator was obligated to sell the shares to plaintiff. Intervenor contends that plaintiff's notice was meaningless because when it was given the time to exercise the option had expired.
Generally, the time prescribed for exercising an option is of the essence, and if the option is not exercised within that time all rights of the optionee are terminated. Wilson v. Edwards, 560 S.W.2d 608, 612 (Mo.App.1978).[1] To determine if time was of the essence, the courts seek the intention of the parties at the time the option was made; that intention is to be gathered from the language employed in the agreement, the acts of the parties, and the facts and circumstances attendant on the transaction. Id.
The contract did not provide that time was of the essence and under the circumstances here we do not believe that was the parties' intention. The stock was of a "close" corporation not listed on any stock exchange and whose value was not likely to fluctuate extensively over a short period of time. Upon decedent's death it is unlikely that if the option was not exercised that the estate would have taken immediate action to dispose of it. It was the obvious intention of the decedent and of plaintiff, who was an officer of the corporation at the time of the agreement, that plaintiff might, if he chose, have the right to own the stock. We see no reason present whereby the decedent would have wanted time to be of the essence and terminate plaintiff's right to the stock if there was no one upon whom the notice could be served.
Only an administrator or an executor could have acted upon the notice and it is not reasonable to assume that the parties intended to require plaintiff to do a futile act such as giving notice to a person who could not act upon it or had no rights to the stock. In Missouri naming one as an executor in a will does not make them an executor in fact upon the testator's death, but only gives the proposed executor the right to become the executor upon complying with the conditions required by law. Stagg v. Green, 47 Mo. 500, 501 (1871). The power of an executor in Missouri is derived not so much from the will, as from the appointment of the court, and a compliance with the law. Lamb, Adm'r v. Helm, Adm'x., 56 Mo. 420, 431 (1874). Until he has qualified under the law, the executor does not become the legal owner of the personality of the deceased, and is not authorized to act as executor. Id. See also 33 C.J.S. Executors and Administrators, § 68, p. 992.
In re McPherson, 114 Misc. 283, 186 N.Y.S. 661, 662 (1921) holds that an optionee *182 is not bound to determine whether he would exercise an option until such time after the death of the optionor-testatrix as the will has been admitted to probate and the executor duly qualified, because until such time there is no one in a position to perform the contract. In Page v. Hughes, 2 B.Mon. (Ky.) 439 (1842), the court held that under the circumstances there present, equity would decree specific performance although plaintiff was delayed in properly exercising an option to purchase beyond the time provided due to the death of the optionor. While a notice provision such as we have here was not present in those cases, we agree with their reasoning and the decision we reach is consistent with them.
Among the cases cited by appellant is Stein v. Bruce, 366 S.W.2d 732 (Mo.App. 1963). There the administratrix contended that she was excused from timely performance of a contract because of the death of her husband. That contention was denied, the court stating that as a general rule a party who is charged with an obligation must perform it, unless performance is rendered impossible by an act of God, by the law, or by the other party. That case is not applicable here. The delay there was because of religious beliefs of the wife, which delayed her appointment as administratrix. The delay here was not created by plaintiff but by law, because until the probate division of the circuit court appointed an administrator there was no one on whom effective notice could be given.
Intervenor also contends that plaintiff has not shown that serving the notice within thirty days was impossible because the evidence does not indicate that he made an effort to have an executor or administrator appointed within thirty days. Even if we assume he was under an obligation to do so, there is nothing in the record to indicate that such an effort would have been successful. In view of the circumstances here, the delay was not unusual. Intervenor did not make application for letters until on the twentieth day after decedent died. Had he not done so then other interested parties could have applied. See § 473.020, RSMo 1978. Having been named executor in the will, intervenor was in a better position to expedite the appointment of an administrator or executor than plaintiff. Whether anyone could have been appointed sooner, had plaintiff made an effort, is unlikely under these circumstances, and the delay in the appointment of an administrator should not work to plaintiff's detriment.
While the parties to the agreement might have put such strict limitations upon the time as to make it expire even though there was no one who could have acted upon the notice, we do not believe that was their intention. We hold that time was not of such strict essence that it was not suspended while there was no one to act upon the notice and that plaintiff's notice was sufficient. Point one is denied.
Intervenor's second point asserts that the agreement is invalid because it is unconscionable and was not supported by sufficient consideration. There was evidence that at the time of decedent's death the stock was worth considerably more than plaintiff was to pay under the agreement. However, there was no evidence indicating what the value of the stock was when the agreement was made.
In determining whether the agreement was unconscionable, we consider the terms of the agreement in light of the circumstances existing when the contract was made. Williams v. Walker-Thomas Furniture Company, 121 App.D.C. 315, 350 F.2d 445, 450, 18 A.L.R.3d 1297, 1302 (1965). The parties to the agreement were father and son and the decedent may not have wanted the price to be paid to be the full value of the stock. Other reasons for the option apparently existed, such as encouraging the son to continue working for the corporation. That work may have been a partial cause of the increase in the value of the stock. Even laying the parties' relationship and plaintiff's employment aside, and assuming that the option price of the stock is now unreasonable, intervenor's claim of unconscionability must be denied because there was no evidence that would support a conclusion that the price of the *183 stock was unreasonable when the agreement was made.
The agreement recited that it was entered into "IN CONSIDERATION of $10.00 and other good and valuable consideration, including the inducement of Second Party to remain the chief executive officer of said company". Plaintiff as the one relying on the agreement had the burden to prove consideration. Ennis v. McLaggan, 608 S.W.2d 557, 561 (Mo.App.1980). However, that burden was met when the agreement was introduced in evidence and no evidence established that the recitals of consideration were erroneous. The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present; it creates a presumption that the recitals are true, which presumption continues unless overcome by evidence to the contrary. Gover v. Empire Bank, 574 S.W.2d 464, 468 (Mo.App.1978); Shelton v. St. Louis & S.F.R. Co., 131 Mo.App. 560, 110 S.W. 627, 629 (1908). See also Kelley v. Rouse, 10 Cal.Rptr., 235, 238, 188 Cal.App.2d 92 (1961); Reece v. Reece, 239 Md. 649, 212 A.2d 468, 473 (1965); 17 Am.Jur.2d, Contracts, §§ 90, 91, p. 432-434; 17 C.J.S. Contracts, § 73, p. 756.
Intervenor contends that the recitation of consideration was insufficient because the agreement "does not specify to whom the `$10.00 and other good and valuable consideration' flows" and the ambiguities in such a document should be resolved against the optionee. We see no merit in this contention. It is obvious that the consideration recited was to the decedent for the grant of the options contained in the agreement. If the consideration included the inducement of plaintiff to remain as chief executive officer as it stated, then that and the other considerations could only flow to the decedent.
Plaintiff remained as chief executive officer and this was sufficient consideration.[2] Plaintiff was not legally obligated to work for the corporation and could have left, but did not do so. Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor. Wells v. Hartford Accident and Indemnity Company, 459 S.W.2d 253, 260 (Mo. banc 1970). The detriment to the promisee may consist of his doing anything legally he is not bound to do or refraining from doing anything he has the right to do. Id. 459 S.W.2d at 260-261. In addition, the ten dollars recited was sufficient consideration. Because an option contract may be of no benefit to the optionee, depending upon changes and circumstances which occur during the life of the agreement, little consideration is necessary to support it. Amounts as low as $1.00 have been held sufficient. See Honeyfield v. Lambeth, 519 S.W.2d 342 (Mo.App.1975); 77 Am.Jur.2d, Vendor and Purchaser, § 36, p. 216; 91 C.J.S. Vendor and Purchaser, § 7, p. 848-849. See also Ragan v. Schreffler, 306 S.W.2d 494, 498 (Mo.1957). Point two is denied.
Intervenor's third point is that the contract is void because it purports to effect the disposition of property at death without complying with the statutory requirements for a will. That contention also must be denied. The agreement was not testamentary because it was a contract made and in force during the decedent's lifetime. See Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 182 S.W.2d 624, 626 (1944); Arrington v. Westport Bank, 577 S.W.2d 166, 171 (Mo. App.1979). See also Green v. Whaley, 271 Mo. 636, 197 S.W. 355, 361 (1917).
The judgment is affirmed.
MAUS, P.J., and HOGAN, J., concur.
NOTES
[1] Even when time is of the essence, conduct of the optionor or his successors may make notice given beyond the time originally provided effective to create a binding contract. See Annotation, When optionees delay in exercising option excused. 157 A.L.R. 1311 (1945). See also Lusco v. Tavitian, 296 S.W.2d 14 (Mo.1956); Chapman v. Breeze, 355 Mo. 873, 198 S.W.2d 717 (1946); Beck v. Strong, 572 S.W.2d 484 (Mo.App.1978); 77 Am.Jur.2d, § 42, p. 224; Annotations 87 A.L.R.3d 805 (1978) and 72 A.L.R.2d 1127 (1960).
[2] We do not decide what the effect would have been had plaintiff terminated his relationship with the corporation prior to decedent's death.