**Wayne D. HEATH,
Plaintiff-Appellant-Respondent,**

v.

**Norman L. SPITZMILLER, Arthur H. Hobbs, James R. Clay and Edward H. Berry, Defendants-Respondents-Appellants.**

**Nos. 13018, 13019.**

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 16, 1983.

Motion for Rehearing Overruled and
Transfer to Supreme Court Denied
Jan. 6, 1984.

Application to Transfer Denied
Feb. 15, 1984.

Stephen W. Holden, Dexter, James E. Spain, Poplar Bluff, for plaintiff-appellant-respondent.

David Crader, Dwight Crader, Crader & Crader, Sikeston, for defendants-respondents-appellants.

PREWITT, Judge.

The parties are certified public accountants who practiced public accounting as a partnership known as "Spitzmiller, Hobbs, Clay, Berry & Heath". The petition and counterclaims involve the rights and obligations of the parties arising out of the formation, dissolution and termination of that partnership. Following nonjury trial all parties appealed from the trial court's determination.

The parties prepared, apparently without the aid of legal counsel, a "Partnership Agreement". It was signed on June 28, 1978, and provided that they were forming a partnership "for the purpose of carrying on a general accounting practice." Among other provisions it provided a formula for determining the value of the partnership should a partner withdraw. At the time of its signing plaintiff orally agreed that he would not withdraw from the partnership within one year and claim the benefits the partnership agreement provided for a withdrawing partner.

Previous to signing the partnership agreement the parties prepared a "merger agreement". It showed the assets each party was putting in the partnership and set forth that plaintiff would pay defendant Berry $31,960 and defendants Hobbs and Clay each $1,927 and defendant Spitzmiller $1,926 to "equalize" the "ownership" in the partnership. It did not contain a place for the parties' signatures and their signing it apparently was not contemplated. Plaintiff never expressly agreed to the amount the "merger agreement" indicated he should pay defendant Berry. Promissory notes dated July 1, 1978, were signed by plaintiff and given to the other defendants reflecting his obligation to each of them for $1,927.

As provided in the partnership agreement, the parties started practicing accounting together on July 1, 1978. On June 29, 1979, plaintiff mailed a letter to defendants notifying them of his intention to withdraw from the partnership effective September 1, 1979. The letter was received by defendants on July 2, 1979. Having learned orally of the contents of plaintiff's letter, on June 30, 1979, defendants met and delivered notice to plaintiff that they dissolved the partnership that day. Effective July 1, 1979, defendants formed a new partnership practicing public accounting as "Spitzmiller, Hobbs, Clay, Berry & Co." They practiced at the same location as the immediate preceding partnership and used the same assets except for certain items taken by plaintiff on or shortly after June 30, 1979. Defendants were still operating this partnership at the time of trial. Following the "dissolution" plaintiff practiced accounting individually.

When the parties could not agree upon the division of partnership assets this suit was instituted. Plaintiff sought an accounting, a determination of his interest in the partnership assets, judgment accordingly, and other relief not pertinent to the issues here. Defendants counterclaimed, seeking damages from plaintiff for taking from the partnership more assets than he was entitled to, and individually seeking

recovery from plaintiff of the obligations to them reflected in the "merger agreement".

In his first point plaintiff contends that the trial court erred in not determining plaintiff's interest in the dissolved partnership in accordance with the formula for a withdrawing partner set forth in the partnership agreement. The trial court determined that distribution of the partnership's assets was to be made in accordance with the Uniform Partnership Law, Ch. 358, RSMo 1978, rather than the partnership agreement.

■ The general rules for distribution of partnership assets are subject to agreement to the contrary. §§ 358.180 and 358.400, RSMo 1978. Partnerships rest on contract and the rights and liabilities of the partners, though fixed by law, are subject to agreement and the rights of a party leaving a partnership may be determined by such an agreement. *Stuart v. Overland Medical Center,* 510 S.W.2d 494, 498 (Mo.App.1974).

■ Defendants' "dissolution" of the partnership was an obvious attempt to circumvent the partnership agreement. The only change caused by their "dissolution" was to hasten plaintiff's departure from the partnership. Substance not form governs here. See *Pointer v. Ward,* 429 S.W.2d 269, 274 (Mo.1968); *Boesel v. Perry,* 268 S.W.2d 68, 70 (Mo.App.1954). The parties made an agreement as to a withdrawing partner's rights and should not be able to change them by attempting to end the partnership before the time stated in plaintiff's notice. We hold that the rights and liabilities of the parties are to be determined in accordance with the partnership agreement.

■ Plaintiff also contends that he is entitled to a share of the profits of the new partnership until he receives the amount due him because the partnership was not terminated by winding up its affairs. He is correct that upon dissolution a partnership is not terminated but continues until the winding up of partnership affairs is completed, § 358.300, RSMo 1978; *Schoeller v. Schoeller,* 465 S.W.2d 648, 654 (Mo.App. 1971), and that until the winding up is

completed a withdrawing partner may be entitled to receive interest on the amount of the partnership assets that he is entitled to receive, or at his option, in lieu of interest, he may receive the profits of the business attributable to the use of the assets he is entitled to in the continuing business of the partnership. § 358.420, RSMo 1978; *Stein v. Jung,* 492 S.W.2d 139, 144 (Mo.App. 1973); *Schoeller v. Schoeller,* supra, 465 S.W.2d at 655.

■ However, here there is an agreement providing for what plaintiff receives which supersedes the law generally. The partnership agreement provided that the amount a withdrawing partner is entitled to receive is to be paid over a period not to exceed 36 months without interest. It contemplates that the remaining partners will continue to practice accounting as partners and sets out what a withdrawing partner receives from the remaining partners. It does not provide for any share of future profits. Plaintiff's rights are determined by that agreement and except for interest at the legal rate on installments not paid when due, plaintiff is not entitled to receive interest or any profits of defendants' partnership.

■ We now discuss and compute what plaintiff is entitled to receive from the partnership assets. The partnership agreement sets forth how the partnership is to be valued when a partner withdraws but does not expressly set forth the percentage he receives. The partnership agreement does state, in a paragraph apart from those referring to a withdrawing partner, that each party's ownership in the partnership is 20%. If that does not determine plaintiff's share he is still entitled to an equal share or 20%. Absent a different agreement each partner receives an equal share in the profits and surplus of the partnership after all liabilities are satisfied. § 358.180(1), RSMo 1978. See also *Grissum v. Reesman,* 505 S.W.2d 81, 86 (Mo.1974).

The partnership agreement values the partnership's assets by multiplying the billings to clients for the twelve months pre-

ceding the date of withdrawal times 150% and adding to it the "fair market price" of the partnership's "equipment" and "Capital Investment". The billings for the twelve months that the parties practiced together were $515,626.79. Multiplied by 150% results in a valuation based on billings of $773,440.18. Plaintiff is entitled to 20% of this or $154,688.03. The partnership agreement provided that there be deducted from this amount the billings for the previous year of clients who desire to have the withdrawing partner continue to do their work multiplied by 150%. Clients whose billing the previous twelve months amounted to $60,121.46 were taken by plaintiff. This multiplied by 150% is $90,182.19. Deducting this from $154,688.03 leaves $64,505.84.

■ There was no evidence of the value of the partnership equipment except for that taken by plaintiff and plaintiff makes no claim for any percentage of the equipment or capital other than seeking the return of his capital. As the partnership agreement is silent on the return of plaintiff's capital and there is no agreement to the contrary, plaintiff is entitled to receive it. § 358.180(1), RSMo 1978.

We next compute the value of plaintiff's capital account. Referring to the parties' capital accounts, a certified public accountant who testified as an expert witness for plaintiff, stated that it was impossible to reconcile the "merger agreement", the "partnership agreement", and the "opening investment accounts" of the partnership. The trial court likewise found, correctly it appears to us, that reconciling them was "an impossible task". When the investment accounts were entered on the partnership books and who made those entries is not shown in the record.

■ The "merger agreement" was prepared before the partnership agreement and the partnership agreement states that the parties have agreed that each party's capital account would be $15,000. On this record we believe that the plaintiff's capital account must be treated at the commencement of the partnership as being $15,000 as the parties agreed in the partnership agreement.

The partnership agreement stated that this was to be "[t]he beginning capital", apparently contemplating that it would be adjusted. In their testimony and exhibits the parties agree that plaintiff's capital account should be reduced because he drew more cash during the year than he was entitled to under their agreement based on the partnership's earnings. The "salary" and "profits" which plaintiff was entitled to under the partnership agreement was $26,813.27. He withdrew $31,489.22 from the partnership during this period, resulting in his capital account at the end of the year being $10,324.05.

The amount that plaintiff is entitled to as determined by the client billings was $64,505.84, and added to his capital account of $10,324.05, he is entitled to receive $74,829.89. Exhibits filed by all parties indicate that plaintiff took from partnership assets furniture, equipment, accounts receivable, and books of a value of $17,441.38 and plaintiff does not dispute that this amount should be deducted from his share of the partnership assets. Thus, plaintiff is now entitled to receive $57,388.51 from the remaining partners. Under the partnership agreement this is to be paid in not to exceed 36 monthly payments. Thirty-six payments would be $1,594.13 each. The first payment should have commenced on August 1, 1979, and plaintiff is entitled to interest on installments not timely paid. The payments for August 1 and September 1, 1979 bear interest at 6% per annum, see § 408.020, RSMo 1978, and payments not timely made thereafter bear interest at 9% per annum. See § 408.020, RSMo Supp. 1982.

We now consider the contentions presented by defendants on their appeal. Defendants contend that they are entitled to recovery against plaintiff because he took more assets of the partnership with him than he was entitled to upon its dissolution. What we have said above in determining the amount due plaintiff disposes of this contention.

The remaining points of defendants contend that the trial court erred in not including in its judgment the amounts in favor of defendants stated in the "merger agreement". The trial court found that the "Merger Agreement ... never fully came into existence and that there was no consideration" for the three notes and Berry's claim that he was due $31,960 from plaintiff.

Promissory notes were signed by plaintiff and given to defendants Spitzmiller, Hobbs and Clay in the amount of $1,927 and in his testimony plaintiff admitted owing these amounts. They were to be paid in order that plaintiff would receive an interest in assets each of those defendants was putting in the partnership agreement. The "merger agreement" was followed by the partnership agreement which gave plaintiff an equal share in the partnership. His receiving that was consideration for the notes because otherwise, based on the assets he brought into the partnership, his interest would have been much less.

 Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor. *In re Estate of Weinsaft,* 647 S.W.2d 179, 183 (Mo.App.1983). The detriment to the promisee may consist of his doing anything legally he is not bound to do. Id. There was both a benefit to plaintiff in his increased ownership in the partnership and a detriment to defendants in reducing their interest and in entering into a partnership with plaintiff.

As these notes have now fully matured, the judgment should show a recovery in favor of each of those defendants and against plaintiff for $1,927 and, as provided in the notes, an attorney's fee of 10% of the principal and interest due as of October 6, 1982, the date of the trial court's judgment.

No promissory note was signed by plaintiff to defendant Berry. Defendant Berry contends that he was entitled to $31,960 as that was the amount provided in the "merger agreement". Defendant Berry and plaintiff prepared the merger agreement but the portion showing this amount was on a page prepared by Berry. Plaintiff did not contest this amount prior to the partnership agreement and admits that he owes Berry some amount. However, he did not testify to the amount owed and the only evidence as to what he owed was $31,960 stated by Berry.

 Plaintiff gave apparent assent to the understandings reflected in the "merger agreement". Although a written document is not signed, the acceptance by a party of the performance by the other gives validity to the instrument and imposes on the acceptor the obligations provided by the agreement. *Hahn v. Forest Hills Construction Company,* 334 S.W.2d 383, 385–386 (Mo.App.1960). Plaintiff proceeded to enter the partnership based on the understandings reflected in the "merger agreement" and received an equal interest in the partnership. The evidence indicates defendants entered into the partnership and the partnership agreement in reliance upon the figures in the "merger agreement". Plaintiff accepted the advantages to him set forth in the "merger agreement" and defendants performed as it provided. Therefore, the obligations of it are imposed upon him. Plaintiff is obligated to defendant Berry for the amount shown in the "merger agreement". Consideration was present on the same basis as the notes.

The judgment is reversed in part and the cause remanded for the judgment to be modified in accordance with this opinion. Upon plaintiff's petition he shall recover from defendants $57,388.51 and interest on this amount as stated above. On Count I of the counterclaim defendant Berry is entitled to recover $31,960 from plaintiff and interest at the rate of 8% from July 1, 1978; on Count II of the counterclaim defendants Spitzmiller, Hobbs and Clay are each entitled to receive $1,927 plus interest at 8% from July 1, 1978, with interest compounded on July 1, 1979, July 1, 1980, and July 1, 1981, and as provided in the notes they hold, an attorneys fee each of 10% of the principal and interest due on October 6, 1982, the

date of the judgment herein. In all other respects the judgment is affirmed.

GREENE, C.J., CROW, P.J., and FLANI-GAN and MAUS, JJ., concur.