Dennis EARL, Respondent,

v.

ST. LOUIS UNIVERSITY, Appellant.

No. 63480.

Missouri Court of Appeals, Eastern District, Division Four.

May 3, 1994.

Dennis C. Donnelly, Peter H. Harris, St. Louis, for appellant.

Patrick J. Hagerty, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

This appeal arises from an action on a contract between the plaintiff, Dennis Earl, and his former employer, St. Louis University.

In 1983 Earl was employed as Chief Financial Officer for St. Louis University Hospital. He worked for the University for six years. During these six years, many changes were made in the hospital structure and personnel. Throughout these changes, several employees had their positions eliminated. Eventually Earl's position with the University was also eliminated. In April of 1989, Dr. Arthur Baue, Vice President of the Medical Center, informed Earl that his position was not being budgeted for the next fiscal year. Earl asked Dr. Baue if he would receive any assistance from the University while he attempted to find other employment. Dr. Baue told Earl to write a proposal for such assistance and to base the proposal on previous severance agreements which the University had entered with former employees. Earl based his proposal on a severance agreement which the University had entered with Dr. Richard Stensrud.

When Earl first arrived at the University, Dr. Stensrud was his supervisor. Dr. Stensrud left the University in August of 1987. Upon leaving the University, Dr. Stensrud negotiated a severance agreement with the University. Earl was involved in these nego-

tiations. Earl retained a copy of this agreement and used it as guideline in drafting his proposed agreement.

Earl submitted his proposed severance agreement to Dr. Baue. Dr. Baue sent the document to one of the University's legal counsel. It was returned with few alterations. On April 17, 1989, Dr. Baue and Earl signed the agreement. Essentially the agreement provided Earl with eight months of severance pay and an incentive bonus payment. He was also allowed to buy at depreciated value the automobile which the University had provided him during his employment.

Father Lawrence Biondi, the President of St. Louis University, did not learn of the agreement until after it was negotiated and signed. After reviewing a copy of the document, Father Biondi met with Dr. Baue and told him that the agreement was unacceptable. Dr. Baue then told Earl that Father Biondi would not accept the agreement. Earl then brought an action against the University for breach of contract.

At trial the jury found for Earl and returned a verdict of $70,000. The University had requested a directed verdict at the end of the plaintiff's evidence. After the jury returned its verdict, the University moved for a judgment notwithstanding the verdict or in the alternative a new trial. Earl requested the trial court to invoke its power of additur to conform the verdict to the contract amount or to grant a new trial on damages only. The trial court denied each of these motions, except for Earl's request for a new trial on damages only. The University appealed. For the reasons set forth below, we affirm the judgment of the trial court.

I

■ In its first point on appeal, the University claims the severance agreement was not supported by any consideration; because Earl did not establish that the agreement was supported by legally sufficient consideration, he failed to present a submissible case of breach of contract. Therefore, the trial court erred when it denied the University's motion for judgment notwithstanding the verdict. The University also argues that this

error was compounded when the trial court itself determined the agreement was supported by consideration and withheld this issue from the jury. In both instances we disagree.

■ Consideration is a necessary element for establishing the existence of a valid contract. *Ennis v. McLaggan,* 608 S.W.2d 557, 561 (Mo.App.1980). The burden of showing legally sufficient consideration rests on the party relying on the contract. *Ennis* at 561. Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor. *In re Estate of Weinsaft,* 647 S.W.2d 179, 183 (Mo. App.1983). The detriment to the promisee may consist of doing anything which he is not legally bound to do or refraining from doing anything which he has the legal right to do. *Weinsaft* at 183.

In the present case, the University argues that there was no detriment to Earl in exchange for the University's performance under the agreement. The agreement states, as consideration for the University's promised performance, Earl agreed to: (1) release the University from all claims he might have as a consequence of his employment and termination, (2) waive his right to a service letter pursuant to § 290.140 RSMo. (1986), (3) cooperate with the University in concluding projects and matters in which he was involved, and (4) continue working until July 1, 1989, or until he obtained other employment. The University attacks Earl's release of the University from claims arising out of his employment and termination. The University argues that Earl had no right to bring any action against the University because any claim he might have brought would have been baseless. Therefore, this alleged release could not act as consideration for the severance agreement.

We need not determine whether Earl's release of the University could support the severance agreement. We find, instead, that the waiver of the service letter and Earl's continued employment were legally sufficient. If two considerations are given for a promise, one of them being legally sufficient to support a promise and the other not suffi-

cient, the promise is enforceable. 1 Corbin on Contracts, § 126 (1963). It is enough that there is one sufficient consideration. *Id.* Since Earl's waiver of the service letter and agreement to continue working were legally sufficient considerations, any determination regarding the alleged waiver of claims would not effect the disposition of this issue.

Earl was legally entitled to request a service letter. *See* § 290.140 RSMo. (1986). Refraining from exercising this right acted as a detriment to Earl and as consideration for the severance agreement. Additionally, Earl was an employee-at-will. He was free to leave the University at any time. After learning that his position was being eliminated for the next fiscal year, Earl agreed to continue working at the University until July 1, 1989, or until he obtained other employment. He agreed to conclude projects in which he was involved. A promise to continue working by an employee who is under no obligation to remain supplies adequate consideration for a contract with the employer. *Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238, 241 (Mo.App.1976). Both Earl's waiver of a service letter and his continued work were legally sufficient consideration to support the severance agreement.

The University does not actually dispute Earl's right to request a service letter. Nor does the University argue that Earl was under any obligation to continue working. Instead, the University's argument seems to be levelled at the disparity in value between the detriment to Earl—waiver of a service letter and continued work at his regular salary—and the benefit he received from the University under the agreement. However, the law is well settled that a consideration, though small, is adequate to support a contract, and that inadequacy of consideration, in the absence of fraud, does not constitute any defense. *Hathman v. Waters,* 586 S.W.2d 376, 385 (Mo.App.1979). This principle rests upon the policy of letting the parties weigh the benefits pro and con and make whatever contract between themselves that they please. *Hathman* at 385. The University did not plead or argue fraud. Therefore, the inadequacy of the parties' proffered considerations was a matter for the parties to determine before entering into the agreement.

■ The University also claims that the trial court erred when it failed to submit the question of lack of consideration to the jury. The University objected to this omission during the instruction conference. The University contends that it is entitled to a new trial because the jury should have been instructed on this issue since it was in dispute.

■ Whether consideration was sufficient to establish a contract is normally a question of law for the court and not a question of fact for the jury. *Vondras v. Titanium Research & Development Co.,* 511 S.W.2d 883, 887 (Mo.App.1974). Of course, if this determination necessarily turns on disputed facts, then the jury, as the arbiter of facts, must decide the issue. *See Bredel v. Parker–Russel Min. & Mfg. Co.,* 21 S.W.2d 932, 935 (Mo.App.1929). The agreement between Earl and the University recited the consideration upon which the agreement was based. The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present; it creates a presumption that the recitals are true, a presumption which continues unless overcome by evidence to the contrary. *Landmark N. County Bank v. National Cable Training,* 738 S.W.2d 886, 891 (Mo.App. 1987). If a plaintiff presents prima facie evidence on a particular issue, then the evidence is, at the least, sufficient to go to the jury on that issue. *Nishwitz v. Blosser,* 850 S.W.2d 119, 122 (Mo.App.1993). Such evidence compels a finding for the plaintiff if the defendant produces no evidence to rebut it. *Nishwitz* at 122.

The University did not present any evidence that Earl was not entitled to the service letter he waived. Nor did the University present evidence that Earl had any obligation to continue his employment. Because these items were contained in the recitals of consideration in the agreement and because the University did not rebut the presumption this created, Earl established, as a matter of law, that there was legally sufficient consideration to support the severance agreement. The trial court did not err in withholding this issue from the jury or in determining that

the agreement was supported by legally sufficient consideration. The University's first point is denied.

## II

Earl submitted his case to the jury on the theory that Dr. Baue, as an agent of the University, had apparent authority to bind the University to the severance agreement. In its second point the University claims that Earl failed to present a submissible case on apparent authority. To establish a purported agent's apparent authority, the person relying on such authority must show that (1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal. *Heshion Motors v. Western International Hotels*, 600 S.W.2d 526, 532 (Mo.App.1980).

The University argues that Earl failed to establish the first prong of apparent authority. The University claims that in no way did Father Biondi manifest consent to Dr. Baue's authority to enter a severance agreement. Earl, the University maintains, did not present any evidence that Father Biondi acted in a manner which would lead Earl to believe Dr. Baue had such authority. The University argues that Earl, instead, relied entirely on the statements and actions of Dr. Baue alone.

There are a number of ways to show that the principal manifested consent to the purported agent's exercise of authority. Generally, any conduct by the principal which, reasonably interpreted, would cause a third person to believe the principal consents to the acts of the agent is sufficient. *See* Restatement (Second) of Agency § 27 (1957). However, it is well established that apparent authority cannot be created by the acts of the supposed agent alone. *Ottawa Charter Bus Service v. Mollet*, 790 S.W.2d 480, 483

(Mo.App.1990). The one sought to be held as principal must have created the appearance of authority in order to be held liable for the acts of the agent. *Ottawa* at 483–84.

Usually the principal creates the appearance of authority in one of three ways. *See Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 847 (Mo.App.1986). Obviously the principal may create the agent's apparent authority by direct, express statements. *Hamilton* at 847. Secondly, the principal may create the appearance of authority by "position." If a principal allows an agent to occupy a position which, according to the ordinary habits of people in the locality, trade or profession, carries a particular kind of authority, then anyone dealing with the agent is justified in inferring that the agent has such an authority. *Hamilton* at 847. The principal may also create the appearance of authority by "prior acts." By allowing an agent to carry out prior similar transactions, a principal creates the appearance that the agent is authorized to carry out such acts subsequently. *Hamilton* at 848.

In the present case, the principal created the appearance of authority through a combination of position and prior acts. Initially, we note that the University's argument is premised on Father Biondi's actions. The University is the principal, not Father Biondi. It is the University which Earl seeks to hold liable for the severance agreement. Although Father Biondi's actions may not have contributed to the appearance of authority, the University's actions did.

There was evidence that severance agreements of this kind, negotiated by the employee's supervisor, were fairly frequent events at the University. In fact, there was evidence regarding four particular, prior severance agreements. Shawn Maloney, Joseph Gagliardi, Richard Stensrud and an employee in the sales division had all entered into severance agreements with the University. Dr. Robert Donati, the Associate Vice President of St. Louis University Medical Center, negotiated and executed the severance agreement with Maloney. Prior to her separation from the University, Maloney had worked in Dr. Donati's division and reported

directly to him. Dr. Donati testified that since Maloney reported directly to him, he alone approved her severance agreement with the University. The document outlining this agreement contained the signature of Greg Edwards, Director of Human Resources. No one else from the University signed this document. Dr. Donati also negotiated and executed the agreement with Gagliardi and approved the agreement with the employee from the sales division. Both Gagliardi and the sales employee worked under Dr. Donati's auspices. No one else from the University approved their agreements. The University's agreement with Dr. Stensrud was the only severance agreement in which Father Biondi was involved. Dr. Baue testified that the only reason Father Biondi was involved in this agreement was because Strensrud's separation with the University was public and controversial. But even in this agreement, Dr. Baue's signature is the only University official's signature on the document. The University honored all four of these agreements.

Earl was aware of these facts. As a financial officer at the medical center, Earl saw to the payments on these agreements. The above facts could easily have led Earl to believe that his supervisor, Dr. Baue, Vice President of the St. Louis University Medical Center, was vested with the same authority to negotiate and execute a similar agreement with Earl, an employee who worked in his division and reported directly to him. The jury was free to determine that the University's actions created an appearance of authority in Dr. Baue to conclude this kind of agreement.

The University claims that Earl failed to prove that his reliance on Dr. Baue's apparent authority was reasonably based. Apparent authority exists only to the extent that it is reasonable for the party dealing with the agent to believe the agent to be authorized. *Hamilton* at 846. The University bases this contention on evidence that Father Biondi had actively tried to curb the authority of University officers to enter severance agreements without his approval. Specifically, Father Biondi testified that he sent a letter, Exhibit D, to Dr. Baue instructing him that all such agreements must have Father Biondi's approval. Father Biondi also testified that he relayed the same information at a meeting with his vice presidents.

Evidence regarding the limitations Father Biondi placed on the authority of University officers to enter into severance agreements was conflicting. Dr. Baue claimed he never received a letter limiting his authority to enter into such agreements. He testified he first saw Exhibit D after the lawsuit was filed in a meeting with the University's attorneys. He had retained all correspondence received from Father Biondi, and the type style of Exhibit D differed from everything else Father Biondi sent him during 1987 and 1988. Also, he claimed that he could not remember Father Biondi ever discussing the subject at any meeting with vice presidents. Dr. Donati testified that he was not aware of any memoranda or policies requiring Biondi's approval for severance agreements. The Chief Executive Officer of St. Louis University Hospital, Herbert Schneiderman, testified that the only communication he received regarding these type of agreements was issued after the Earl agreement was completed. The jury was free to resolve this conflict in the evidence in favor of Earl.

Furthermore, Father Biondi's attempts to limit officers of the University from entering this type of agreement would not effect Earl's reliance on Dr. Baue's apparent authority unless Earl was aware, or reasonably should have been aware, of these attempts. While these efforts would be effective in revoking Dr. Baue's actual authority, nothing indicates that Earl knew or should have known of this change in policy. The jury concluded that his reliance in Dr. Baue's apparent authority was reasonable.

The University also complains that Earl did not change positions in reliance on Dr. Baue's apparent authority. Clearly, however, Earl waived his right to a service letter, continued his employment at the University, and entered into a binding contract in reliance on Dr. Baue's apparent authority. Earl presented enough evidence to submit the question of apparent authority to the jury. The University's second point is denied.

### III

■ Under its third point on appeal, the University complains of an assortment of alleged errors entitling it to a new trial. The University's Point III violates Rule 84.04(d). Neither Point III nor the argument thereunder cites a single authority. If, as is the case here, the point is one for which precedent is appropriate and available, it is the obligation of the appellant to cite such authority. *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978). A point of error unsupported by a citation of relevant authority is deemed abandoned. *Inman v. Reorganized School Dist. No. 11,* 845 S.W.2d 688, 694 (Mo.App. 1993).

■ However, we have gratuitiously examined the complaints and, even if the University had not abandoned this point, we find no prejudicial error. Two of the University's points are directed at the admissibility of evidence. The University complains that the court improperly excluded evidence of Earl's subsequent employment. Earl was employed one week after his employment with the University ended. The University also complains that the trial court allowed evidence which was relevant only as to Dr. Baue's actual authority, but not as to his apparent authority. Dr. Baue testified that he believed he was acting on behalf of the University when he entered into the severance agreement with Earl.

A trial court is accorded broad discretion in ruling on questions of admissibility. *Sharaga v. Auto Owners Mut. Ins. Co.,* 831 S.W.2d 248, 256 (Mo.App.1992). The ruling of the trial court will not be disturbed absent a showing of an abuse of discretion. *Sharaga* at 256. Both of the University's complaints are based on the relevancy of this evidence. The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo.App.1991).

Earl's subsequent employment was not relevant. The University argues that Earl's subsequent employment showed that Earl did not change positions in reliance on Dr. Baue's apparent authority. On the contrary, Earl did not obtain his subsequent employ-

ment until after he entered into the severance agreement in reliance on Dr. Baue's authority. The University also argues that this evidence was relevant in showing a lack of consideration to support the agreement. Under the severance agreement, Earl did not make any promises regarding his subsequent employment. Earl's subsequent employment had no bearing whatsoever on the issue of consideration. Moreover, Dr. Baue's testimony that he believed he was acting on behalf of the University was harmless in light of the fact that Earl did not elect between theories of actual and apparent authority until the instruction conference.

■ Under Point III, the University also complains that the verdict directing instruction assumed the existence of a contract. The trial court used a modified version of MAI 26.02. The "Notes on Use" under MAI 26.02 provide that this instruction is "applicable only when there is no dispute concerning the terms of the agreement and the defendant's obligation to perform his agreement." MAI 26.02 [1991]. The Notes on Use must be followed. *Mobley v. Webster Elec. Co-Op.,* 859 S.W.2d 923, 931 (Mo.App.1993). Since the University disputed its obligation to perform under the agreement, it was error to instruct the jury with a modified version of MAI 26.02. We must determine the prejudicial effect of this error pursuant to Supreme Court Rule 70.02(c).

We find no prejudice to the University. The only disputes regarding the University's duty to perform were the issues of consideration and Dr. Baue's authority. For the reasons set forth in the first point of this opinion, the issue of consideration was properly withheld from the jury. The only remaining dispute revolved around Dr. Baue's authority. This issue was submitted to the jury in the verdict directing instruction. The modified version of MAI 26.02 required the jury to first find that Dr. Baue was acting in the scope and course of his agency. "Scope and course of agency" arising from apparent authority based upon acts of the agent with the knowledge of the principal was defined for the jury by MAI 13.07(2). Thus, the disputed issue was submitted to the jury, not

as an assumed fact, but for its determination. Therefore, the University did not suffer any prejudice from the modified verdict directing instruction.

The remainder of the University's complaints under Point III deal with the sufficiency of the evidence on apparent authority. The University argues that there was no evidence to support giving the instruction defining apparent authority, an instruction patterned after 13.07(2). The University also argues that a reasonable jury could not find that the University vested Dr. Baue with apparent authority. And finally, the University argues that the jury award of $70,000, an amount less than the University's remaining obligation under the contract, reflects the fact that the jury did not truly believe that Dr. Baue had the apparent authority to bind the University. The second point of this opinion adequately addresses the issues regarding the sufficiency of the evidence on the issue of apparent authority.

Having examined the gallimaufry of complaints lumped together in Point III under Rule 84.13(c), we find no error, plain or otherwise.

The judgment of the trial court is affirmed and the cause is remanded for a new trial on the issue of damages only in accordance with the order of the trial court.

GRIMM, P.J., and AHRENS, J., concur.